Jerome MACLIN, Plaintiff-Appellant,

v.

Dr. FREAKE, Defendant-Appellee.

No. 79–1760.

United States Court of Appeals,
Seventh Circuit.

Submitted April 8, 1981.*

Decided June 3, 1981.

Jerome R. Maclin, pro se.

Kermit R. Hilles, Michigan City, Ind., for defendant-appellee.

Before SWYGERT, SPRECHER and WOOD, Circuit Judges.

PER CURIAM.

Plaintiff Jerome Maclin, a prisoner at the Indiana State Prison, sued prison Medical

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P. (effective Aug. 1, 1979); Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Services Administrator Dr. Ronald Freake, alleging Dr. Freake's deliberate indifference to Maclin's serious medical needs violated Maclin's eighth amendment rights. Maclin sought one million dollars in damages, but no injunctive or declaratory relief. Maclin also requested that counsel be appointed to represent him. Judge Sharp denied the request, stating appointment is a privilege, not a right and is a matter within the district court's discretion. Maclin proceeded *pro se*.

The allegations contained in Maclin's complaint and in his response to Dr. Freake's "Motion for a More Definite Statement" are as follows. Maclin alleged that he is a paraplegic and is confined to a wheelchair. When he entered the Indiana State Prison on June 28, 1978, he requested a prescription for Valium, the only drug administered to him before his incarceration. Dr. Freake denied the request, informing Maclin that Valium was not available at the prison. Maclin's subsequent request for Percodan was denied for the same reason. However, he was given an unspecified substitute medication which, he alleged, caused serious side effects (weakness and upset stomach) and failed to relieve the pain or muscle spasms related to his paralysis. Maclin further alleged that he entered the prison hospital (though he did not indicate when he entered or how long he stayed there) and requested physical therapy, and that Dr. Freake told him therapy would be available when suitable equipment was installed at the prison. According to Maclin, Dr. Freake never made any effort to obtain such equipment. Maclin complained that because of the lack of adequate medical treatment he can no longer do the "range of motion exercises" of which he was previously capable; his legs "now remain locked in one position," causing him physical and mental suffering.

On May 24, 1979, Dr. Freake moved for dismissal or in the alternative for summary judgment on the ground that he is not a medical doctor and had no direct personal responsibility for the medical treatment—or lack thereof—accorded Maclin, and therefore, under *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971), he could not be sued for damages under § 1983. In an affidavit attached to his motion, Dr. Freake alleged that his responsibility at the prison was "to ensure that inmates receive the medicine or therapy that has been prescribed for them by physicians." Therapy was available, to those inmates for whom it was prescribed, at two nearby hospitals, but since no therapy had been prescribed for Maclin, Dr. Freake alleged he had no authority to send him to either hospital. However, Dr. Freake also stated that he was investigating the possibility of sending Maclin to one of the hospitals for evaluation of his condition.

Shortly after Dr. Freake moved to dismiss, Maclin filed a "Request for Production of Documents," seeking his complete prison record, including all medical records, interdepartmental memoranda and written statements identifiable as reports concerning him. The trial judge never acted upon this request. Instead, the judge dismissed Maclin's complaint "without prejudice," ruling that Dr. Freake was not responsible for Maclin's treatment and that, since the possibility of sending Maclin to the hospital was under investigation, there was no deliberate indifference to Maclin's medical needs. Maclin appealed.

We hold the district court abused its discretion in denying Maclin's request for appointed counsel. We therefore reverse and remand.

It is true that the district court has broad discretion to appoint counsel for indigents under 28 U.S.C. § 1915(d), and its denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights. *La Clair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967); *see Heidelberg v. Hammer*, 577 F.2d 429, 431 (7th Cir. 1978); *Chapman v. Kleindienst*, 507 F.2d 1246, 1250 n.6 (7th Cir. 1974). However, it is also well established that "to say that a district court may exercise discretion is not to say that such discretion is unreviewable. Discretionary choices 'are not left to a court's inclination,

but to its judgment; and its judgment is to be guided by sound legal principles.' " *Ekanem v. Health & Hospital Corp. of Marion County*, 589 F.2d 316, 319 (7th Cir. 1978), *quoting Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975).

There are few hard and fast rules governing appointment of counsel under section 1915(d). The statute provides, in pertinent part:

1915. *Proceedings in forma pauperis*

(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor.

\* \* \* \* \* \*

(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

Thus by its terms section 1915(d) suggests not simply refusal of the request for counsel but outright dismissal of the case either where the movant's financial status is misrepresented or where the claim is frivolous or malicious.[1] Where neither of these conditions exists, however, the district court's decision whether to appoint counsel is not so simple. The decision must rest upon the court's careful consideration of all the circumstances of the case, with particular emphasis upon certain factors that have been recognized as highly relevant to a request for counsel.

■ First, the district court should consider the merits of the indigent litigant's claim. Even where the claim is not frivo-

lous, counsel is often unwarranted where the indigent's chances of success are extremely slim. *See, e. g., Miller v. Pleasure*, 296 F.2d 283 (2d Cir. 1961), *cert. denied*, 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962). In *Miller*, a state mental hospital patient sued the hospital superintendent for damages, alleging the defendant had kept him in the hospital illegally. He brought an interlocutory appeal from the denial of his request for counsel. The Second Circuit affirmed the denial because of the apparent availability to the defendant of the defenses of immunity, timeliness, and the regularity of the state's confinement procedures. Similarly, this court has refused to appoint counsel on appeal where it determined, because the law was clearly settled, "such action would be futile." *Ligare v. Harries*, 128 F.2d 582, 583 (7th Cir. 1942). As one district court has stated, "[t]he general rule seems to be that, before the Court is justified in exercising its discretion in favor of an appointment, it must first appear that the claim has some merit in fact and law.... Were it otherwise, the appointment in most instances would work a hardship on counsel with no concomitant benefit to the party requesting it." *Spears v. United States*, 266 F.Supp. 22, 25–26 (S.D.W.Va. 1967) (citations omitted).

■ Once the merits of the claim are considered and the district court determines the claim is colorable, appointment of counsel may or may not be called for, depending upon a variety of other factors. One such factor is the nature of the factual issues raised in the claim. Where the indigent is in no position to investigate crucial facts, counsel should often be appointed. In *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971), for example, the *pro se* plaintiff, a state prisoner, sued his former attorney for selling his car and keeping the proceeds. The attorney admitted selling the car, but

---

1. *See, e. g., Louisiana ex rel. Purkey v. Ciolino*, 393 F.Supp. 102 (E.D.La.1975) (claim deemed frivolous); *Foley v. Massachusetts*, 310 F.Supp. 1330 (D.Mass.1970) (same); *Gilland v. Hyder*, 278 F.Supp. 189 (E.D.Tenn.1967) (same); *Allison v. Wilson*, 277 F.Supp. 271 (N.D.Cal.1967) (same); *Spears v. United States*, 266 F.Supp.

22 (S.D.W.Va.1967) (same); *Davison v. Joseph Horne & Co.*, 265 F.Supp. 750 (W.D.Pa.1967) (same). *Cf. Ehrlich v. Van Epps*, 428 F.2d 363 (7th Cir. 1970) (refusal to appoint counsel and dismissal of case upheld where absence of diversity and federal question jurisdiction was clear).

asserted several defenses to the charge of conversion. Because the prisoner could not possibly investigate the truth or falsity of the attorney's assertions, the Eighth Circuit held counsel should have been appointed for him. In *Shields v. Jackson*, 570 F.2d 284 (8th Cir. 1978), a prison inmate sued his arresting officer to recover personal property the officer allegedly seized at the time of the arrest. In ordering the district court to appoint counsel, the Eighth Circuit stated: "We take this action because it is clear that Shields is indigent and not in a position to adequately investigate the case, and because we believe that the complaint states a cause of action and that the appointment of counsel will advance the proper administration of justice." *Id.* at 286.

Counsel may also be warranted where the only evidence presented to the factfinder consists of conflicting testimony. In such cases, it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination. Thus, in *Manning v. Lockhart*, 623 F.2d 536 (8th Cir. 1980), a prisoner accused the warden of beating him. The prisoner tried the case himself, his request for counsel having been denied. At trial, the only two witnesses who testified were the prisoner and the warden. The judge refused to allow the prisoner's cellmate to testify, but allowed into evidence the affidavits of two guards, even though the defense gave no explanation why the guards could not be present at trial and subject to cross examination. Reversing, the Eighth Circuit stated that "here, where there is a question of credibility of witnesses and where the case presents serious allegations of fact which are not facially frivolous," the district court abused its discretion in denying the prisoner's request for appointed counsel. *Id.* at 540.

By contrast, courts have denied requests for counsel where the factual issues are uncomplicated or insubstantial and thus do not require "the aid of experienced trial counsel to sift through a complicated record or to take testimony," *United States ex rel. Robinson v. Myers*, 222 F.Supp. 845, 848 (E.D.Pa.1963), *aff'd*, 326 F.2d 972 (3d Cir. 1964); *accord, United States ex rel. Simmons v. Pennsylvania*, 292 F.Supp. 830, 832 (E.D.Pa.1968).

Another factor to be considered is the capability of the indigent litigant to present the case. In *Drone v. Nutto*, 565 F.2d 543 (8th Cir. 1977), the district court was ordered to reconsider appointing counsel for the indigent plaintiff because the record indicated the plaintiff suffered from mental disease and therefore could not conduct the case unaided. More generally, the Fourth Circuit has stated that "[i]f it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir.), *cert. denied sub nom. Leeke v. Gordon*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). On the other hand, where it appears the indigent litigant is competent to pursue the claim, courts have denied requests for appointment of counsel. A refusal to appoint was upheld in *Hudak v. Curators of the University of Missouri*, 586 F.2d 105 (8th Cir. 1978), *cert. denied*, 440 U.S. 985, 99 S.Ct. 1799, 60 L.Ed.2d 247 (1979), where the indigent was a former law professor whom the court deemed competent to handle her case unaided. This court has likewise denied a request for counsel on appeal where the indigent appellant appeared capable of handling the matter himself. *Davis v. United States*, 214 F.2d 594 (7th Cir. 1954).[2]

The district court should also take into consideration the complexity of the legal issues raised by the complaint. As noted above, this court has declined to appoint appellate counsel where the law was so clearly settled that appointment would

---

2. *See also Spears v. United States, supra,* 266 F.Supp. 22 (S.D.W.Va.1967) (indigent plaintiff's workable knowledge of legal process was demonstrated by the complaint, motions, and other papers he filed with the court prior to his re- quest for counsel); *Rhodes v. Houston*, 258 F.Supp. 546 (D.Neb.1966) *aff'd*, 418 F.2d 1309 (8th Cir. 1969), *cert. denied*, 397 U.S. 1049, 90 S.Ct. 1382, 25 L.Ed.2d 662 (1970) (same).

serve no purpose. *Ligare v. Harries, supra.* We think it follows that where the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.

The factors we have discussed thus far are those most often cited by other courts presented with requests for counsel. They are, in addition, the factors most relevant to the case before us now. They are by no means an exclusive checklist, however. In some other case other elements will no doubt be found significant—even, perhaps, controlling. But for present purposes the foregoing discussion will serve as an adequate foundation for our consideration of Maclin's request for counsel.

Maclin has presented a colorable claim for relief. He is a paraplegic and, according to the limited record presented here, received no physical therapy for his condition from the time he entered prison on June 28, 1978, until at least May 24, 1979, the date of Dr. Freake's affidavit. These and other specific allegations form a factual basis for his claim that prison authorities exhibited "deliberate indifference to [his] serious medical needs," which if proved would show a violation of his eighth amendment right not to be subjected to cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Further, Maclin is in no position to investigate facts germane to his complaint. Confined to a wheelchair and in constant pain, he can hardly be thought capable of conducting an adequate examination of his own medical records, let alone of developing evidence of the medical treatment he ought to have received. Should his case go to trial, we think he will need an attorney to elicit relevant, comprehensible testimony that will elucidate for the factfinder the treatment he received and the adequacy of that treatment.

Finally, this is not a case in which the indigent plaintiff has demonstrated a workable knowledge of the legal process, *cf. Davis v. United States, supra,* 214 F.2d 594 (7th Cir. 1954). When Dr. Freake filed his motion for dismissal or for summary judgment, with an attached affidavit, Maclin made no attempt to contest the motion with his own affidavit pointing out the existence of genuine issues of material fact, although he was clearly entitled to do so under Federal Rule of Civil Procedure 56(c). We cannot infer from this omission a deliberate choice not to respond to Dr. Freake's motion. Maclin did request production of his prison medical records, and it is reasonable to suppose that he intended to use his records to dispute Dr. Freake's assertions. Rather, we think it was Maclin's lack of familiarity with legal procedures that resulted in a dismissal of his claim which may well have been premature.[3]

Under all the circumstances presented here, we conclude the district court should have granted Maclin's request for appointed counsel. We reverse the grant of summary judgment to the defendant and remand for appointment of counsel and for further proceedings.[4] Circuit Rule 18 shall apply.

---

**3.** The district court granted summary judgment to Dr. Freake on the grounds (1) that Dr. Freake was not responsible for Maclin's medical treatment, and (2) that there had been no "deliberate indifference" to Maclin's serious medical needs. Both these grounds present questions of fact which Maclin vigorously disputes. Had he known to submit an affidavit in response to Dr. Freake's motion, the district court might not have granted the motion.

**4.** *Cf. Muhammad v. Rowe,* 638 F.2d 693 (7th Cir. 1981).