Anant Kumar TRIPATI, individually and in behalf of Fort Lincoln Group, Inc., in its corporate capacity, Plaintiffs,

v.

Milton Rice POLLAND, individually and as actuarial consultant; McMillen Trust, a Delaware Trust with Wilmington Trust Delaware as Trustee; British American Insurance Company, Ltd.; George Ragsdale, individually and as corporate representative; David Thurlow, individually and as corporate representative; Fiji Islands Insurance Commission; Clive Amputch, Deputy Insurance Commissioner, individually and in his official capacity, Defendants.

No. 85–C–0637.

United States District Court,
E.D. Wisconsin.

June 13, 1985.

Anant Kumar Tripati, pro se.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This action was initiated on April 24, 1985, when the plaintiffs filed their *pro se*

complaint against the several individual, corporate, and governmental defendants. Although the complaint is not a model of pleading clarity, it appears that the principal claims spring from the plaintiffs' attempt to acquire one of the named defendants, the British American Insurance Company, Ltd. ("BAICL"). Acting as the plaintiffs' legal and business representative, defendant Milton Rice Polland allegedly met with BAICL president, David Thurlow, in March of 1983 in Malaysia for the purpose of discussing the proposed takeover; one month later, those defendants were joined by co-defendant George Ragsdale, BAICL's United States representative, in drafting an investment agreement for the purchase of the BAICL by plaintiff Fort Lincoln Group, Inc.

Pursuant to the terms of that contract, the plaintiffs were purportedly to receive all of BAICL's assets upon payment of $2,000,000.00 in United States currency. In order to facilitate that acquisition, BAICL agents were to provide the Fort Lincoln Group, Inc. with all information and data necessary for licensing the company operations, along with the power of attorney to permit this plaintiff to operate BAICL until all regulatory approvals were secured. The final draft of the contract was allegedly signed by representatives of both defendant BAICL and plaintiff Fort Lincoln Group, Inc. in May of 1983.

The plaintiffs claim that, subsequent to the execution of that contract, they made payment of the $2,000,000.00 purchase price by way of a cashier's check written against their account in the Imperial Bank of Los Angeles, California, and delivered by their agent, defendant Polland, to a BAICL representative at the Bank of America, also in Los Angeles, California. The complaint charges that, despite receipt of the $2,000,000.00 purchase price, BAICL "inadvertently failed to produce or provide the necessary required documents and data [to] enable the contracting company, Fort Lincoln Group, to obtain regulatory approvals in which to operate the Fiji Island based British American Insurance Company, Ltd." Plaintiffs' *Complaint* at 8 (April 24, 1985). The plaintiffs further allege that, in November of 1983, BAICL withdrew or revoked its obligation to convey its power of attorney, thus abrogating the operational licensing provision of the investment contract.

Later that month, defendant Fiji Island Insurance Commission, aided by Insurance Commissioner Clive Amputch, purportedly took control and seized all of BAICL's assets and, some two months later, tendered and sold those assets without approval by or compensation for the plaintiffs.

The substantive allegations of the complaint are that defendant BAICL, along with co-defendants Ragsdale, Thurlow, and Polland, conspired together to induce the plaintiffs' monetary investment, knowing that the "contractual agreement and promise was a sham, perpetrated through improper actuarial analysis." Plaintiffs' *Complaint* at 10 (April 24, 1985). According to the plaintiffs, these conspiratorial acts were undertaken in violation of established fiduciary duties and effected a breach of the contract between the parties, all to the unjust enrichment of the named corporate and individual defendants. Significantly, the complaint also charges that the defendants' actions were in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, and that the seizure and subsequent sale of BAICL assets by defendants Fiji Island Insurance Commission and Clive Amputch were "intentional, deliberate, willful, wanton, and [undertaken] with a conscious and reckless disregard for the right[s] of plaintiffs," all in violation of international law. Plaintiffs' *Complaint* at 18 (April 24, 1985).

By their ad damnum clause, the plaintiffs seek to enjoin defendants BAICL and the Fiji Island Insurance Commission from dispersing any sums held by them in connection with the transaction upon which this lawsuit is premised; they also seek compensatory and punitive damages against all named defendants, rescission of the investment contract executed by the parties, and

an accounting of those monies received by the defendants in connection with the plaintiffs' investment.

Presently before the Court in this matter is the plaintiffs' motion for the appointment of counsel, presumably pursuant to 28 U.S.C. § 1915(d). In support of this petition, plaintiff Anant Kumar Tripati has provided the Court with an affidavit of his financial condition, plainly indicating his indigency status. In addition, this plaintiff contends that the allegations articulated in his complaint are colorable; that all of the plaintiffs' assets are "frozen"; and that "[d]ue to incarceration in a prison in Tucson the number of hours available to research are limited." Plaintiff's *Motion for the Appointment of Counsel* (May 23, 1985).

■ Of course, there is no constitutional right to appointed counsel in a civil case. *Caruth v. Pinkney*, 683 F.2d 1044, 1048 (7th Cir.1982), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983); *Ehrlich v. Van Epps*, 428 F.2d 363, 364 (7th Cir.1970). Nonetheless, federal courts are empowered by statute to appoint counsel when the circumstances justify it; section 1915(d) of the Title 28 of the United States Code specifically authorizes the Court to request an attorney to represent an indigent party in its prosecution of a civil action.

■ In general, the Court has broad discretion to appoint counsel for indigents under 28 U.S.C. § 1915(d), *McKeever v. Israel*, 689 F.2d 1315, 1318 (7th Cir.1982); *Maclin v. Freake*, 650 F.2d 885, 886 (7th Cir. 1981), and its denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights. *LaClair v. United States*, 374 F.2d 486, 489 (7th Cir.1967); *Heidelberg v. Hammer*, 577 F.2d 429, 431 (7th Cir.1978). However, discretionary choices are not left to the Court's inclination but to its judgment, and its judgment is to be guided by sound legal principles. *Caruth v. Pinkney*, 683 F.2d 1044, 1048 (7th Cir.1982), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983); *Ekanem v. Health*

*& Hospital Corporation of Marion County*, 589 F.2d 316, 319 (7th Cir.1978).

■ It is within this context that the Court of Appeals has fashioned standards for the exercise of discretion in considering whether court-appointed counsel for indigent civil litigants is appropriate. These five non-exclusive factors are:

1. whether the merits of the indigent's claim are colorable;

2. the ability of the indigent plaintiff to investigate crucial facts;

3. whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel;

4. the capability of the indigent litigant to present the case; and

5. the complexity of the legal issues raised by the complaint.

*Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *Maclin v. Freake*, 650 F.2d 885, 887–889 (7th Cir. 1981).

While the district court is obliged to consider each of these factors in determining whether the appointment of counsel is appropriate under the circumstances, it is well established that

[f]oremost among the "certain factors" that an appointing court must consider is an analysis of the merits of the indigent litigant's claim from both a factual and legal standpoint. *Maclin [v. Freake]* makes clear that a court need not appoint counsel when it considers the indigent's chances of success to be extremely slim....

When justifying a decision to appoint, a district court must apply the *Maclin* standards to the facts of each case and *if* counsel is both warranted and available, the court should *request* representation.... As noted, of primary importance in an indigent's request for counsel is an evaluation of the factual and legal merits of the claim and its chances for success.

*Caruth v. Pinkney,* 683 F.2d 1044, 1048, 1049–1050 (7th Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983) (emphasis original).

As the Court has already noted, the allegations articulated in the plaintiffs' complaint, while hardly unintelligible, do not rise to the level of clarity envisioned by the architects of the federal pleading rules. Although federal trial judges are admonished to view and interpret with liberality the complaints filed by pro se litigants unschooled in the law, this Court's concerns with respect to the technical sufficiency of the present cause of action are heightened by the exotic nature and broad scope of the allegations advanced by the plaintiffs. While the Court is not presently in a position to issue any dispositive rulings with respect to the substantive merits of this lawsuit, it is inclined to believe that any order appointing counsel to represent the plaintiffs in the prosecution of their colorful claims would, at this stage in the proceedings, prove premature. It may well be that the interests of all parties to this action would be best served if the plaintiffs' case were prosecuted by an attorney; that determination however, premised principally on the paramount interest in the equitable resolution of all outstanding claims, is, in the Court's view, best reserved until the defendants are afforded the opportunity to respond to—and, in so doing, define more narrowly—the charges against them, even if only in their answers, affirmative defenses, or preliminary procedural or dispositive motions.

■ The Court's considerable reservations with respect to the appointment of counsel at this juncture are further underscored by its uncertainty with respect to the jurisdictional posture of this action. Among other apparent facial difficulties with the plaintiffs' complaint, the Court notes that only the respective residences—and not citizenships—of several of the named defendants are set forth therein. Although it appears that both plaintiffs are residents of states other than those in which each of the named defendants re-

sides, it is well established that residence alone is not sufficient to establish the diversity of citizenship necessary to invoke the jurisdiction of the federal trial courts under 28 U.S.C. § 1332(a). *Banks v. St. Mary's Hospital & Medical Center,* 558 F.Supp. 1334, 1335 (D.Col.1983); *Wilson v. Pickens,* 444 F.Supp. 53, 55 (W.D.Okla. 1977). Absent a more clear showing of the diversity of both named plaintiffs from all named defendants—some of whom are presumably citizens of foreign states—the Court would be reluctant to undertake the significant step of appointing counsel for the plaintiffs.

■ Moreover, even if the plaintiff is successful in establishing the Court's diversity jurisdiction over this matter, there appears to be, at first blush, a significant question with respect to the propriety of venue in this district. According to the unequivocal factual averments of the complaint, the precise terms of the intended corporate acquisition were negotiated in Malaysia in March of 1983; although the actual situs of the execution of the agreement some two months later is not stated, the plaintiffs claim that the transfer of the $2,000,000.00 purchase price was effected entirely in Los Angeles, California. The only apparent connection to the Eastern District of Wisconsin is that defendant Milton Rice Polland is a citizen of the state; at the same time, there is no allegation that any of the transactions upon which this lawsuit is based took place in this district.

Pursuant to 28 U.S.C. § 1391(a), prescribing the proper situs of venue for actions founded solely on diversity of citizenship, this case is properly brought only in the judicial district in which all plaintiffs or all defendants reside or in which the claim arose. The lack of commonality of residency among any of the parties to this action limits the critical issue to a determination of the situs in which the claim arose. As indicated above, the Court has considerable reason to believe that the present cause of action springs from some location—domestic or international—other than the Eastern District of Wisconsin. If so, and this mat-

ter is properly transferred to another federal district, the trial judge to whom the case is reassigned would be in the best position to address the merits of the plaintiffs' present request. In any event, the Court opines that it would prove ill-advised to grant the plaintiffs' motion for appointment of counsel prior to a full exposition and resolution of these significant, jurisdictional and venue-related issues.

Accordingly, for the reasons set forth above, the Court hereby DENIES the plaintiffs' motion of May 23, 1985, for the appointment of counsel, pursuant to 28 U.S.C. § 1915(d). At the same time, it does so without prejudice to the plaintiff's repetitioning this or some other court for appointment of counsel to represent him at a later stage in these proceedings, should it become clear that his cause of action is, in fact, significantly more meritorious—both on jurisdictional and substantive grounds—than the Court now believes it to be and the particular legal and factual issues presented by the litigation of this matter take on such complexity as to preclude a thorough and meaningful prosecution by one unschooled in the law.