**Robert Edward LIPSCOMB, Plaintiff,**

v.

**GENERAL FOODS CORPORATION, a New York corporation; Liberty Mutual Insurance Company, a Massachusetts company, Defendants.**

**No. 84–C–436–C.**

United States District Court,
W.D. Wisconsin.

July 25, 1985.

Robert Edward Lipscomb, pro se.

Henry Field, Jr., Boardman, Suhr, Curry & Field, Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

In this civil action for damages, plaintiff, an inmate of the Michigan state prison, is suing for injuries suffered allegedly while he was an inmate at the Federal Correctional Institution in Oxford, Wisconsin and he ingested part of a defective batch of Tang instant breakfast drink. Jurisdiction is present. 28 U.S.C. § 1332. Presently before the court is plaintiff's motion for the appointment of counsel.

In an order entered herein on September 20, 1984, I denied an earlier request from plaintiff for the appointment of counsel. In denying the request, I made the following comments:

> This is not a case where an indigent prison inmate alleges violations of his or her rights under the Constitution or a federal statute. *See Childs v. Duckworth,* 705 F.2d 915 (7th Cir.1983); *Merritt v. Faulkner,* 697 F.2d 761 (7th Cir. 1983); *McKeever v. Israel,* 689 F.2d 1315 (7th Cir.1982); *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981). Instead, this lawsuit is indistinguishable from those brought by nonprisoners in ordinary civil litigation. In this situation, an indigent prison inmate's need for special consideration is less compelling. *See Haines v. Kerner,* 404 U.S. 519 [92 S.Ct. 594, 30 L.Ed.2d 652] (prisoner complaint must be construed liberally). *Cf. Bounds v. Smith,* 430 U.S. 817, 827 [97 S.Ct. 1491, 1497, 52 L.Ed.2d 72] (1977) (habeas corpus and civil rights actions are of "fundamental importance ... in our constitu-

tional scheme" because they directly protect our most valued rights).

Moreover, appointing counsel for indigent litigants where a contingent fee arrangement is feasible compromises the neutral posture that a court must maintain in its relationship with members of the bar. Once appointed in a civil damage action, counsel may be able to negotiate a potentially remunerative contingent fee contract. Under these circumstances, this court should avoid choosing among members of the bar until it becomes clear that a contingent fee arrangement is not feasible.

In an order entered subsequently on March 28, 1985, I stated that I would appoint counsel for plaintiff because it appeared from his efforts at conducting discovery that plaintiff was having considerable difficulty investigating and developing the factual basis for his claim. As I noted in that order, I thought that the appointment of counsel would materially advance the resolution of the case.

Following the entry of the March 28 order, plaintiff advised the court that he would not accept representation by appointed counsel. The matter rested there until July 8, 1985, when plaintiff filed the motion for appointment of counsel that is now before the court, which causes me to reconsider the orders filed earlier. Upon reevaluation, I am persuaded that this is not a case in which counsel should be appointed, despite the fact that plaintiff has been unsuccessful to date in persuading a private lawyer to take his case on a contingency fee basis. Notwithstanding the comments that I made in the March order concerning plaintiff's evident difficulty in conducting discovery, I do not believe that appointment is justified in a civil case such as this, which raises no issue of constitutional dimension, and does not attack any aspect of prison life.

The issue is not whether district courts have authority to appoint counsel to represent indigent prisoner-plaintiffs in products liability suits. It seems probable that they do. 28 U.S.C. § 1915(d) provides that a

court may request an attorney to represent any person granted leave to proceed as a pauper. The statute does not distinguish between federal question and other kinds of cases. *See also McKeever v. Israel,* 689 F.2d at 1319–1320. ("There should be no question that a 'district court has broad discretion to appoint counsel for indigents under 28 U.S.C. § 1915(d).' *Maclin [v. Freake],* 650 F.2d at 886 ...")[1] The issue is whether it is a proper use of a court's authority to require lawyers to undertake the representation of indigent prisoner-plaintiffs in cases which ordinarily are handled by private lawyers on a negotiated contingency fee basis.

█ In a number of cases the Court of Appeals for the Seventh Circuit has spoken forcefully about the obligation of district courts to give careful consideration to the requests of indigent litigants for appointed counsel and the concomitant obligation of the bar to provide *pro bono* representation for such litigants. The general rule in the circuit is that appointment of counsel for indigents "rests in the sound discretion of district courts unless denial would result in fundamental unfairness impinging on due process rights." *LaClair v. United States,* 374 F.2d 486, 489 (7th Cir.1967). *See also Maclin v. Freake,* 650 F.2d at 886; *Heidelberg v. Hammer,* 577 F.2d 429, 431 (7th Cir.1978); *Chapman v. Kleindienst,* 507 F.2d 1246, 1250 n. 6 (7th Cir.1974). Although the court has never explained the circumstances in which it would find that the denial of counsel resulted in "fundamental unfairness impinging on due process rights," it has encouraged appointment of counsel and has analyzed the deni-

al of counsel under an abuse of discretion standard, reversing those decisions that did not reflect careful consideration of the factors indicating the need for appointment. *See, e.g., McKeever v. Israel,* 689 F.2d 1315; *Caruth v. Pinkney,* 683 F.2d 1044 (7th Cir.1982); *Maclin v. Freake,* 650 F.2d 885. In *Maclin,* the court articulated the specific factors the district courts should consider in deciding whether to appoint counsel: (1) the merits of the indigent litigant's claim; that is, whether there is a colorable claim; (2) the nature of the factual issues raised in the claim and whether the indigent is in a position to investigate crucial facts; (3) the need for cross-examination, particularly where there is a question of credibility; (4) the capability of the indigent litigant to present the case; and (5) the complexity of the legal issues. *Id.,* at 887–889.

All of the cases in which the court has reviewed district court decisions denying such appointments have concerned either challenges to a conviction, as in *LaClair v. United States,* 374 F.2d 486, or challenges to conditions of confinement, as in *McKeever v. Israel,* 689 F.2d 1315 (challenge to prison mail policy). So far as I can determine, the court of appeals for this circuit has never been asked to rule directly on the question of the appointment of counsel in private civil actions not raising any constitutional challenge or federal question.[2]

If the *Maclin* guidelines are applicable to all cases brought by indigent litigants and not just to those raising federal questions, a fair reading of those guidelines would require the appointment of counsel in the

1. 28 U.S.C. § 1915 speaks in terms of "requesting" counsel to represent an indigent litigant, thereby seeming to limit the court's power to draft counsel into the service of indigents, but most courts have read the statute as authorizing the appointment of counsel. *See, e.g., McKeever v. Israel,* 689 F.2d 1315, 1319 (7th Cir.1982):

 ... the vast weight of authority in the Circuit and elsewhere demonstrates that the power of a court to provide counsel under section 1915(d) is commonly referred to as a power to "appoint."
 (Footnotes omitted.)

2. The Court of Appeals for the Eighth Circuit directed the appointment of counsel for a prisoner in a case brought against the prison's former lawyer for alleged fraudulent conversion of the prisoner's car. The court based its holding on "the overall interests of the proper administration of justice," noting that "[f]or obvious reasons [the plaintiff] alone cannot investigate the case or hope to obtain evidence to prove his allegations," and that "[t]he court will be aided by appearance of counsel at all proceedings." *Peterson v. Nadler,* (per curiam) 452 F.2d 754, 757, 758 (8th Cir.1971).

present case. Plaintiff has a colorable claim. At this juncture, I must assess it as having merit because I am in no position to evaluate with any accuracy the probable success of his claim. As is to be expected in a products liability case, the facts are complex. At issue are the nature and source of the alleged defect, causation, and consequential injuries, all of which are matters requiring expert witnesses. As I have noted, although plaintiff is a vigorous advocate for his own position, he has had considerable difficulty investigating and developing the facts necessary to the successful prosecution of his lawsuit.

For several reasons, I believe that the court of appeals did not intend district courts to evaluate the need for counsel in personal injury lawsuits in the same manner as in federal question litigation.

The primary reason is that personal injury claims have an economic value that makes meritorious claims attractive to lawyers without any need for judicial intervention. Assuming that a prisoner can obtain access to counsel to explain the factual basis for the claim, he or she would have approximately the same likelihood of obtaining representation on a contingency basis as a nonincarcerated person with the same claim. The fact that the injured party is a prisoner is not in itself such an impediment as to foreclose injured prisoners from obtaining representation by counsel. It might be somewhat more difficult for a prisoner to find legal representation because he is not able to make a personal visit to the lawyer's office, but there is no reason to believe that any prisoner with a meritorious personal injury claim could not find a capable lawyer willing to provide representation. If counsel refuse to take the claim because it appears unlikely to succeed or because, even if successful, it would not generate enough in money damages to justify the cost and risk of prosecution, there is no reason for the court to intervene to require a lawyer to proceed with prosecution of the claim. Certainly a court would not intervene to require a lawyer to go forward with a dubious or unprofitable claim on behalf of a non-incarcer-

ated, non-indigent person. The only justification for intervention on behalf of an indigent prisoner would be in the circumstance in which the prisoner could show that no lawyer would even consider the prisoner's claim solely because of the prisoner's status and not because of a negative evaluation of the economic value of the claim.

It is necessary to keep in mind that legal resources are a scarce commodity. I am aware that in *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir.1982), the court suggested otherwise at p. 1049:

> Although one proposal requiring mandatory *pro bono publico* work by attorneys was recently voted down by the American Bar Association, the very proposal itself indicates the awareness of the bar of its obligation to protect the rights of indigent litigants. *See* Rule 8.1, ABA Model Rules of Professional Conduct, Discussion Draft (1980). The bar within this Circuit has long viewed appointments of counsel as part of its professional duty to provide public service. We have faith that lawyers always will be found who are willing to represent the indigent without remuneration. Although we are not unsympathetic with the burden a district court faces in attempting to secure *pro bono* counsel, we merely note that the existence of this burden will not excuse a court from attempting to see that counsel is appointed in appropriate cases. We further noted that by appointing counsel in appropriate cases, a district court not only insures that the meritorious claims of a *pro se* plaintiff are not defeated, but also eases the burdens placed both on the district court and on this court when a skilled attorney presents a case. *See Stronger v. Rowe*, 616 F.2d 993, 1001 (7th Cir. 1980).

> In sum, a request for appointment of counsel should not be denied solely for the reason that an attorney who takes the case may not be compensated for his efforts. *Pro bono publico* work by attorneys is an established tradition and it is up to the district courts to tap the

reservoir of talent that exists within this Circuit.

However true it may be that there are sufficient lawyers to accept all federal court requests for representation of indigent litigants, it is not the case that there are enough lawyers to provide *pro bono* representation for all the individuals who need free or low cost legal assistance. There is an entire universe of such persons, of which indigent *pro se* litigants in federal court are only the aspect most visible to judges. The reality is that in making appointments of counsel, the district courts are determining the allocation of a finite resource. As tempting as it is to appoint counsel freely, if only so that the case will proceed more smoothly, the courts must be sensitive to the fact that there are many other demands for *pro bono* legal work no less deserving than the representation of incarcerated persons.

Additionally, the obligatory *pro bono* representation of an indigent litigant can represent a significant financial commitment on the part of the lawyer appointed to the case. The lost opportunity for remunerative work is only one obvious cost. If expert witnesses are to be hired and brought to trial, or demonstrative exhibits prepared, or depositions taken, the lawyer must bear the expenses personally, as no governmental source of funding is available or any means of easing the burden on any particular lawyer of the costs of representation. In smaller cities and rural areas, few lawyers, or their firms, are in a position to make such a financial commitment, regardless of their willingness to provide *pro bono* assistance to indigents. A products liability case would be an expensive case to prosecute effectively.

In a case brought on constitutional or federal statutory grounds, the vindication of rights and the resulting social value justifies the personal financial burden imposed upon the appointed private lawyer and the diversion to the federal court of a limited resource. These cases perform the important function of scrutinizing the exercise of governmental power "by those who employ and apply the organized force of the community." Doyle, The Court's Responsibility to the Inmate Litigant, 56 *Judicature* 407 (1973). Although individual cases may be legally frivolous or brought for no reason other than harassment of the defendants, the cases as a body raise some of the most profound issues that confront federal courts. *See, e.g., Morales v. Schmidt*, 340 F.Supp. 544 (W.D.Wis.1972). The societal value of these cases is reflected in the Congressional decision to authorize the award of attorneys' fees to those lawyers who are successful in vindicating a constitutional or federal statutory right. 42 U.S.C. § 1988.

No similar social justification or statutory provision for attorneys' fees attaches to the prosecution of a claim for damages for a personal injury, such as the plaintiff's claim in the instant case. Although products liability litigation can have salutary effects upon worker and consumer safety, essentially such litigation, if successful, produces benefits that inure solely to the plaintiff and his counsel.

■ Taking into consideration the finite quantity of free legal assistance available in this district, the many competing demands for that assistance, the significant cost to private counsel of providing free representation, and the overriding factor that plaintiff's case raises no claim of constitutional or federal statutory violation, but rather, a state tort claim of the type that lawyers in private practice handle routinely and profitably, I conclude that in the absence of any showing by plaintiff that his mere status as a prisoner has prevented him from obtaining consideration of his personal injury claim by any lawyer in private practice, this court should not exercise its authority to require or even request a lawyer to represent plaintiff in the prosecution of his private cause of action for damages for personal injuries.[3]

---

**3.** The State Bar of Wisconsin provides a lawyer referral service. If plaintiff wishes to utilize the service, he can write directly to the state bar for

## ORDER

IT IS ORDERED that plaintiff's motion for appointment of counsel is DENIED.

assistance, at 402 W. Wilson Street, Madison, Wisconsin, 53703.