Frances SHAFA, Plaintiff,

v.

MONTGOMERY WARD & CO., INC., Defendant.

No. 85 Civ. 0926 (PKL).

United States District Court, S.D. New York.

Nov. 22, 1988.

Frances Shafa, Rego Park, N.Y., pro se.

Ronald S. Platt, New York City, for defendant.

## OPINION

LEISURE, District Judge.

This employment discrimination action was tried over two and a half days, before an advisory jury pursuant to Fed.R.Civ.P. 39(c), as directed by order of this Court. The advisory jury found that the plaintiff had not established a prima facia case of unlawful discrimination. For the reasons below, the Court agrees with the finding of the advisory jury. The following findings of fact and conclusions of law are made pursuant to Fed.R.Civ.P. 52(a).

*Background.*

Generally, this case involved the termination of plaintiff's employment by the defendant Montgomery Ward Co., Inc. ("Montgomery Ward"). The plaintiff brought the action under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), seeking back pay, injunctive relief, and other relief as might be appropriate.

Plaintiff proceeded in this action *pro se.* This Court denied plaintiff's application for appointment of counsel by order dated August 28, 1986. That order was not appealed, and it is not reconsidered here. The inevitably protracted and frustrating nature of a *pro se* trial, however, warrants some present comment on that prior decision.

At the time of that denial of counsel order this Court found, upon a consideration of the nature and merits of the plaintiff's case, and her ability to afford and obtain a private attorney, that "it would be an unwise exercise of discretion, if not an abuse thereof, to appoint counsel." That decision was made largely under the guidelines set forth in *Jenkins v. Chemical Bank,* 721 F.2d 876, 879 (2d Cir.1983).

After this Court's decision, the Second Circuit issued *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986). That much-discussed opinion significantly recharacterized the factors that district courts should properly consider in determining whether to appoint counsel in civil cases. In basically adopting the approach expressed by the Seventh Circuit in *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981), the Second Circuit maintained that "[a]s a threshold matter, ... the district court must consider the merits of the indigent's claim." *Hodge,* 802 F.2d at 61.

In this Court's denial to appoint counsel in the case at bar, it found that "[o]n the present record, the Court finds that the plaintiff's claim raises no complex issues and does not appear to have merit."

The realities of shifting burdens and postures of a case often require, of course, that initial determinations at one stage of a proceeding be subsequently reconsidered by the Court. *See, U.S. v. Yonkers Bd. of Educ.,* 856 F.2d 7, 11 (2d Cir.1988). Judicial impartiality demands such mental calesthenics, and they are routinely performed. Regardless of the prior determinations made in this case, however, when it proceeded to trial plaintiff was given an opportunity to prove her case to essentially *two* impartial fact finders. In retrospect it is apparent that the determination made two years ago proved to be correct, namely that the plaintiff's claim in this case lacked real merit. The threshold consideration of *Hodge,* 802 F.2d at 60, would therefore not have permitted the appointment of counsel today.

*Discussion.*

Plaintiff worked in the data entry department (the "department") of Montgomery Ward for thirteen and a half years. The office consisted of approximately 30 female data entry workers. A high percentage of those workers were of foreign descent. Plaintiff's supervisor, Mrs. Rose Wilson ("Wilson"), managed the department during the entire period of plaintiff's employment. The business and inter-personal relationships of the employees overlapped; it is apparent that, in many cases, the feelings between the employees were multi-layered and complex.

Plaintiff's employment record, as evidenced by written form evaluations ("em-

ployee appraisal reports"), was basically satisfactory throughout that entire period. Those reports did make note of occasional tardiness and disruptive behavior, however, and warned her regarding such unauthorized absences. Testimony by Wilson indicated that these reports were not comprehensive. Annual raises depended upon satisfactory evaluations, and satisfactory reviews were routinely given.

Plaintiff on occasion exhibited problematic personality traits; these included outbursts and occasional refusals to work. Plaintiff was described as stubborn and, at times, explosive.

There were certain "close-out" days in the data entry department. On these days various orders and information from the retail company had to be processed, and the department was particularly busy. Friday, February 12, 1982, was such a close-out day. The following Monday, February 15, 1982, was what is now referred to as President's Day. This day was not a company holiday for Montgomery Ward nationally, but it was the practice of the New York office to close, and count the day as a paid "personal day" for its New York employees.

Approximately two weeks prior to the weekend of February 13, 1982, plaintiff approached Wilson and informed her of her intention to take off Friday, February 12, 1982, as a personal day. Wilson responded that that day was a "close-out" day, and she could not allow plaintiff to take the day off. There was evidently an angry exchange, and plaintiff insisted that she would take the day off. Plaintiff wished to attend a recreation camp, as relaxation therapy to ease tension. She made reservations to attend the camp for that weekend.

On Wednesday, February 10, 1982, the situation again became explosive. Plaintiff and Wilson engaged in a shouting match in front of the entire crew, and Wilson's supervisor, Sheldon Goldfarb ("Goldfarb"), intervened to quiet the disturbance.

On Thursday, February 11, 1982, shortly before 3:00 p.m., Goldfarb met with plaintiff. This meeting occurred upon the notification of Goldfarb, by Wilson, of the events surrounding plaintiff's stated resistance to showing up for work. She was warned that her blatant refusal to report for work on February 12, 1982, could result in disciplinary action, including termination of her employment. Plaintiff was steadfast in her stated intention to take the day off.

Plaintiff left Montgomery Ward at 3:00 p.m. on February 11, 1982, one hour before the scheduled end of her shift. She did not report to work on Friday, February 12, 1982, and did not contact the department at all on that day. Monday, February 15 was, as indicated above, a day when the New York Montgomery Ward was closed. Plaintiff reported to work on Tuesday morning, February 16, 1982. Plaintiff was advised on February 16, 1982 that she was to be terminated for her insubordination and failure to report for work on February 12. She did not work on February 17 or 18, and it is unclear whether she was paid for those days. On February 19, 1982, a meeting was held with plaintiff, Goldfarb, Wilson and a Montgomery Ward personnel office representative named Phil Montalvo ("Montalvo"). At this meeting Montgomery Ward's internal procedures for termination were consummated. All of those in attendance, including plaintiff, signed a dismissal memorandum.

That dismissal memorandum recited that the reason for plaintiff's termination involved her failure to report for work, as well as insubordination. Plaintiff was not under duress when she signed that document, but made continued requests to be reinstated to her position.

The vacation policy of Montgomery Ward included vacation time, which required prior approval from supervisory personnel, and "personal days," which also required approval. The apparent practice in the department was to freely grant such personal days, often with little prior notice. There was no policy regarding employees leaving before the scheduled end of their shift, although apparently that practice was sometimes tolerated when the employee

worked through the lunch hour, and cleared it with her supervisors.

The employees from the department threw occasional parties, for special occasions like birthdays or anniversaries. The multi-national employees typically prepared ethnic dishes for these parties, which were usually held during the lunch hour. The preparation of dishes was not mandatory, or a part of official Montgomery Ward policy. Plaintiff had, on occasion, prepared such dishes. She also prepared ethnic dishes specially for her supervisor, Wilson.

One of these parties was to be held on February 12, 1982, for the anniversary of one of Wilson's colleagues. Plaintiff did not prepare an ethnic dish for that particular event.

Plaintiff alleges that Wilson's personal dislike of plaintiff in part contributed to her termination. As noted, the emotions and feelings between the principals here were complex, and ranged over the spectrum of interpersonal relations. It is clear that there was genuine affection on some level between Wilson and plaintiff. This is all irrelevant to the instant claim, however—if there was a personality conflict that eventually led to the plaintiff's termination, it had nothing to do with the plaintiff's national origin.

During one of the heated exchanges between Wilson and plaintiff, plaintiff alleges that Wilson made a comment alluding to her Iranian background. That assertion was seriously contested by testimony at trial, and impeached by records showing that it was a relatively recent addition to plaintiff's long history of discrimination claims in administrative and state tribunals arising from her termination in 1982. The Court finds plaintiff's contention to be without merit. Similarly without merit was plaintiff's unsupported, and contradicted, allegation that Goldfarb made a reference to "rules in [her] country" during the meeting between Goldfarb and plaintiff on February 11, 1982.

Plaintiff did not produce any other evidence that tended to support her discrimination claim. She alluded to the fact that Montgomery Ward subsequently withdrew from New York (which incidentally resulted in the termination of Wilson and Goldfarb), and attempted to assert that minorities were released first, before non-minorities. There is nothing to support this claim. Furthermore, as noted above, the entire department was multi-ethnic, and plaintiff did not introduce a scintilla of evidence to indicate that she was treated differently from any other employee. Plaintiff's occasional references at trial to the "hostage situation" were completely irrelevant to the events surrounding her termination.

Plaintiff also attempted to infer that her termination resulted from her failure to prepare ethnic dishes, both generally and for the party on February 12, and that this reflected discriminatory intent. Plaintiff's claims were wholly unsubstantiated. Even if it were assumed that her termination was caused in part by personality conflicts that manifested themselves in disputes over non-office functions, such conflicts do not themselves establish discrimination on the part of defendant.

The framework of discrimination actions under Title VII is well established.[1] The Supreme Court has on several occasions stated the proper approach, and that approach has been incorporated and re-stated by this Circuit. Plaintiff must initially demonstrate, by a preponderance of the evidence, a prima facie case of discrimination. If this initial burden has been met by plaintiff, the defendant is required to rebut the presumption of discrimination thus created by articulating some legitimate, non-discriminatory reason for the employee's termination. If defendant carries this burden, the final step in the analysis turns back to the plaintiff to prove, by a preponderance of the evidence, that the reasons offered by the defendant for the termi-

---

1. Discrimination actions under Title VII and § 1983 are generally composed of the same elements, and embody the same legal framework. *Choudhury v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 44 (2d Cir.1984) (*citing, Hudson v. IBM*, 620 F.2d 351, 354 (2d Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980)).

nation were not its true reasons, but were pretexts for actual discrimination. *Dister v. The Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir.1988), (citing, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). *See also, Woodbury v. New York City Transit Authority,* 832 F.2d 764, 769 (2d Cir.1987).

From the above, it is clear that plaintiff's case never proceeded beyond the first element of the discrimination analysis. Even had such a showing been made, the defendant more than "articulated" permissible reasons for the termination; it established that plaintiff's termination was unrelated to her national origin. The advisory jury findings are in accord with the Court's holding. Although the jury heard the entire case of both plaintiff and defendant, its answers to interrogatories indicate that the jury found that plaintiff never established her prima facie case.

Truly impermissible discrimination in the workplace continues to be a fundamental and disturbing societal problem, and its eradication poses a formidable challenge and test for the institutions of our society. The discrimination laws evince "the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823. The present case, however, did not come close to implicating the worthy objectives of the Civil Rights Act of 1964; the Court must find, as did the advisory jury, for the defendant.

Finally, upon the return of the advisory jury verdict, defendant made a conditional motion for attorney's fees in the event that it was the prevailing party. This motion was and is denied; the relative wealth of the parties is a factor that was largely influential in this Court's decision to refuse, in its discretion, the award of fees.

*Cf., Cohen v. West Haven Bd. of Police Com'rs,* 638 F.2d 496, 505 (2d Cir.1980).

## CONCLUSION

Based on the foregoing, the Court finds for the defendant, and denies plaintiff's requests for relief in all respects. The action is therefore dismissed with prejudice, and without costs or attorney's fees.

SO ORDERED.