**Nehemiah ROLLE, Plaintiff,**

v.

**Sean A. FANELLI, President of Nassau Community College, et al., Defendants.**

**No. CV 96–0585 (DRH).**

United States District Court, E.D. New York.

April 25, 1996.

Nehemiah Rolle, Freeport, New York, pro se.

No appearance, for defendants.

*MEMORANDUM AND ORDER*

BOYLE, United States Magistrate Judge.

By order dated April 1, 1996 Denis R. Hurley, District Judge, referred to the undersigned the *pro se* plaintiff's application for appointment of counsel, pursuant to 28 U.S.C. § 1915(d)[1].

This application was filed on February 9, 1996 simultaneously with the filing of the summons and complaint and a motion to proceed *in forma pauperis.* By order dated February 29, 1996 Judge Hurley granted leave to the plaintiff to proceed *in forma pauperis,* and pursuant to such authorization arrangements have been made with the United States Marshal's Service to serve the summons and complaint herein.

The action which the *pro se* plaintiff has filed is identical in most respects to a prior action filed in January 1995. The action is against the plaintiff's former employer, Nassau County Community College (hereinafter referred to as "NCCC") and is filed pursuant to Title VII of the Civil Rights Act of 1964 based on allegations of racial and national origin discrimination.

The court observes that the allegations in paragraphs 6 through 17 in the 1996 action are virtually identical to the allegations of the complaint at paragraphs 18 through 29 in the pending action entitled *Nehemiah Rolle v. Nassau County Community College,* 95 CV 0203 (DRH and ETB) to which the same district and magistrate judge are assigned.

The apparent reason for commencement of the new action appears to be two-fold: (1) the defendant in the 1995 action asserted as an affirmative defense (Tenth Affirmative Defense) that the *pro se* plaintiff had failed to exhaust his administrative remedies in that 180 days had not transpired from the filing of the EEOC complaint and the EEOC had not issued a right to sue letter; and (2) the 1996 complaint, in addition to the defendant, NCCC, adds six persons as individual defendants, each of whom is alleged to have participated in the series of events that give rise to plaintiff's termination as an employee at NCCC. Four of the individual defendants are officials at NCCC and two are Nassau County officials.

With respect to the 1995 action, on February 6, 1996 the undersigned extended discov-

---

1. This section, in relevant part, states: "[t]he court may request an attorney to represent any [indigent] person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

ery to May 31, 1996 and scheduled the matter for a final conference on June 6, 1996 at 3:30 p.m. Thus, it would appear that in June the 1995 case should be ready for trial.

### Prior Requests For Counsel

The court notes that the *pro se* plaintiff on two prior occasions, in the 1995 case, requested that Judge Hurley appoint counsel. The first application was made at the very outset of the litigation before joinder of issue. The application was denied by Judge Hurley with leave to renew. *See* Memorandum and Order dated May 10, 1995. In denying relief, the district judge initially noted the difficulty of assessing the merits of the plaintiff's case at such a preliminary stage. *See Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir. 1986). The court, however, assumed *arguendo* that merit existed and denied the application (Memorandum and Order, dated May 10, 1995, at 3) on the ground that consideration of the "secondary criteria"[2] outlined in *Hodge* did not warrant the requested relief "at this time." *Id.*

The plaintiff renewed his request for appointment of counsel on September 14, 1995. By order dated September 15, 1995, Judge Hurley denied the application. The court noted in the Memorandum and Order, dated September 15, 1995, that issue had only recently been joined (in June 1995) and that it was still difficult to evaluate the merit of plaintiff's case. The district court stated that, assuming that merit exists, the court was still "unconvinced" that plaintiff had satisfied the "secondary criteria" for appointment of counsel. *Id.* at 2. More specifically, Judge Hurley noted since the filing of an Amended Complaint the plaintiff had "demonstrated . . . his ability to effectively present his claims without the assistance of counsel." *Id.* Additionally, the court noted that there was no reason to believe that the case involved "substantial factual investigation" or that plaintiff lacked the "ability to investigate the crucial facts" (quoting from *Hodge,* 802 F.2d at 61) in the case. Lastly, the court

noted that there was no "special reason" set forth that the appointment of counsel "would more likely lead to a just determination of his claims." Memorandum and Order dated September 15, 1995 at 3.

Judge Hurley nonetheless again left the door open to appointment of counsel as the litigation progressed:

If, as the case develops, it appears that justice would be better served by the appointment of counsel, the Court will again reconsider Plaintiff's request.

*Id.* at 3.

The record reflects one further effort by the *pro se* plaintiff to obtain the appointment of counsel. On November 15, 1995 plaintiff requested an extension of time to file a notice of appeal from the order dated September 15, 1995, denying appointment of counsel. Judge Hurley treated the application as a request pursuant to 28 U.S.C. § 1292(b) for certification to take an interlocutory appeal. The district court denied the motion, by Memorandum and Order dated January 18, 1996, on the ground that there was no "controlling question of law (28 U.S.C. § 1292(b)) that would warrant immediate appeal." *Id.* at 3.

Notwithstanding this denial, the *pro se* plaintiff attempted to have the denial reviewed by the Court of Appeals. By order dated February 23, 1996, the Court of Appeals *sua sponte* dismissed the appeal for lack of jurisdiction on the ground that the district court had not issued a final judgment.

### DISCUSSION

The time is now ripe to consider the sole criterion that up until now has not been considered; namely, the plaintiff's ability to represent himself at the trial. Discovery will be complete in the 1995 case at the end of May, and discovery in the 1996 case should be minimal. It is anticipated that the two

---

**2.** Judge Hurley identified these criteria to include: "(1) the complexity of the legal issues raised; (2) plaintiff's ability to present the case without the assistance of counsel; (3) the complexity of the legal issues involved; and (4) any

special reason . . . why appointment of counsel would be more likely to lead to a just determination." Memorandum and Order, dated May 10, 1995 at 3.

cases will be consolidated for purposes of trial pursuant to Rule 42(a) Fed.R.Civ.P.

As noted in Judge Hurley's two prior orders "plaintiff's ability to present the case without the assistance of counsel" is one of the criteria to be considered under *Hodge,* 802 F.2d at 61–62. *See* Memoranda and Orders dated May 10, 1996 and September 15, 1995 at 3 and 2, respectively.

Consideration of the factual issues raised by this litigation is essential to plaintiff's request for appointment of counsel. The court notes that this was not the first termination of the plaintiff by NCCC. Although he was employed in various custodial positions by NCCC for approximately 17 years, plaintiff was terminated on September 28, 1993. The plaintiff claims that NCCC hired a new Administrative Assistant in March of 1992 and that that person had filed "false and pretextual charges" against him leading to that termination. Amended Complaint 95 CV 203 at para. 15. The court notes that plaintiff grieved his termination and, pursuant to the terms of the collective bargaining unit, an arbitrator heard the grievance relating to plaintiff's termination and seven additional grievances by plaintiff.

By order dated August 25, 1994, the arbitrator, Eugene T. Coughlin, after an extensive hearing,[3] directed that the plaintiff herein be "re-instated to his former position without loss of seniority" and with back pay. Arbitrator's Award dated August 25, 1995 at 8.

The conduct which is the subject of both federal actions involves alleged discriminatory acts occurring both before the arbitration award and following reinstatement, up to and including the second termination which plaintiff claims was in retaliation for filing charges

of discrimination with the Equal Employment Opportunity Commission.[4]

The Amended Complaint in the 1995 action contains the following factual allegations:

1. [O]n March 31, 1992 . . . [the supervisor] came into plaintiff's work area while plaintiff was eating lunch and commented "that nigger food sure smells good."

2. [O]n April 6, 1992, while plaintiff was on a coffee break with a co-worker, . . . [the supervisor] made a racial remark to plaintiff stating that plaintiff should get back to work because "they already want to fire (plaintiff from the job. . . .")

3. [O]n April 14, 1992 . . . [the supervisor] came into plaintiff's work area again and said "you blacks are lazy workers," and that he was going to do his best to get plaintiff fired. He also stated that his superior just told him to write up as many workers as possible for disciplinary action.

4. [O]n May 26, 1992 . . . [the supervisor] came in plaintiff's work area and addressed plaintiff by saying "Hey you, Black Nigger, what are you doing in this work area?" When plaintiff responded that he was assigned to work in that area, . . . [the supervisor] responded that plaintiff shouldn't get smart with him, and called plaintiff "Nigger," and . . . [the supervisor] reached into his short brown leather jacket as if he was going to pull out a gun. Amended Complaint para. 11(a)–(d).

5. On October 26, 1994 . . . [an officer] of Respondent College told plaintiff to "get out of my office you black son-of-a-bitch. . . ." Amended Complaint para. 24(a)(95 CV 203). Complaint, para. 12(c) (96 CV 585).

6. . . . .When plaintiff came in, the night custodial supervisor immediately called

---

3. The Arbitration Award reflects that NCCC called eleven (11) witnesses; and the Union four (4) including the plaintiff. The award makes reference to ninety (90) exhibits which the parties submitted into evidence. Arbitrator's Award at 10–13. The hearings occurred over fifteen (15) days between January 21 and July 15, 1994.

4. The Arbitrator cautioned the plaintiff "that repeated acts of indifference to his work and production as well as failure to cooperate by regular

attendance and maintaining a reasonable production schedule may result in further suspensions or discharge where warranted."

The Arbitrator also admonished management, stating:

It is also hoped that management at the College learned something from this and prior awards that they must change their way in dealing in Labor Relations. Arbitration Award dated August 25, 1994, at 9.

..., the day building manager, who advised that plaintiff was to go meet him at the Physical Plant. The grossly threatening and abusive conduct that was then committed by [the day building manager] (including but not limited to, his swinging a baseball bat in plaintiff's direction and threatening to physically harm plaintiff if plaintiff didn't leave the premises) is described in detail in plaintiff's letter to Thomas Gulotta, dated November 3, 1994, and annexed hereto marked Exhibit "D." Amended Complaint, para. 27 (95 CV 203). Complaint, para. 15 (96 CV 585).

In the 1995 action NCCC denies all the essential allegations of the amended complaint. It is anticipated that the defendants will do the same in the 1996 action. Thus, it appears that this case will present sharp factual issues and will be decided on issues of credibility.

This is a classic type of case where the need for the assistance of professional trial counsel is essential to ensure a just result:

if a case's factual issues turn on credibility, this should weigh on the side of appointing counsel since "it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination." (quoting *Maclin v. Freake*, 650 F.2d 885, 888 (7th Cir.1981)) (appointing counsel for a *pro se* prisoner because his claim that he was assaulted by the warden turned on the witness' credibility). *Hodge*, 802 F.2d at 61.

The Second Circuit set forth the applicable standard for appointment of counsel in civil actions in *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir.1986). The court should initially consider whether the indigent's position "was likely to be of substance." In the event that it is not, that is determinative and counsel need not be assigned. In the event that the *pro se* plaintiff meets the threshold requirements with respect to merit, then the court should consider the secondary criteria, which includes the need for professional cross-examination at trial to determine veracity.

Applying the foregoing standard, the court finds that the *pro se* plaintiff has made an adequate threshold showing that he has

"some chance of success", *Hodge*, 802 F.2d at 60–61. Application of the secondary criterion noted above warrants appointment of counsel, in the exercise of the court's discretion, to ensure effective cross-examination on the sharp factual issues on which the outcome of this trial will likely turn.

SO ORDERED.