**Willie Luther DARDEN, Jr., Plaintiff-Appellant,**

v.

**ILLINOIS BELL TELEPHONE CO., Defendant-Appellee.**

No. 83–3171.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1986.

Decided July 30, 1986.

Roslyn C. Lieb, Chicago Lawyers Committee, for Civil Rights Under Law, Chicago, Ill., for plaintiff-appellant.

Marc I. Lipton, Schaumburg, Ill., for defendant-appellee.

Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Willie Luther Darden, Jr. filed a racial discrimination suit under Title VII of the Civil Rights Act of 1964 against the Illinois Bell Telephone Company after he was discharged from his position as a remittance processing clerk. Darden's Title VII complaint was filed *pro se*, and the district court subsequently denied his motion for appointment of counsel. Some months later, the district court granted summary judgment to Illinois Bell on two of Darden's three claims; the parties entered into a settlement agreement with respect to the third claim.[1] Darden now appeals the district court's treatment of his request for counsel and conclusions regarding the merits of his claims. We affirm the trial court's rulings on both issues, although not without reservations on Darden's request for counsel. In order to aid district courts in their treatment of requests for counsel, this opinion not only clarifies our previous holdings, but also establishes procedural guidelines.

### I.

Illinois Bell hired Darden in October 1975, and his subsequent employment history was marred by numerous charges of tardiness and absenteeism. Illinois Bell discharged Darden for tardiness in 1976 but reinstated him in December 1977 to

---

**1.** This settlement renders moot the jurisdictional question raised by this panel. Darden had appealed the district court's summary judgment order before a final resolution was achieved on the third claim, after the district court granted his petition for certification for immediate appeal under Federal Rule of Civil Procedure 54(b). Although we requested briefing on the appropriateness of this appeal, the fact that the third claim has since been resolved means that a final judgment now has been entered on all of Darden's claims.

effect a settlement of his grievance. From January 1978 until his final discharge in October 1979, Illinois Bell charged Darden with more instances of tardiness, placing him on probation several times and in some cases suspending him. During this period Darden filed two charges with the Equal Employment Opportunity Commission (EEOC): the first, filed in January 1979, alleged that Illinois Bell had for racial reasons passed over Darden for transfers and promotions. Darden, Illinois Bell, and the EEOC executed an agreement settling this charge in March 1979 by establishing a job performance assessment program. The second charge, filed in August 1979, alleged that in retaliation for Darden's first EEOC complaint, Illinois Bell was engaging in a pattern of harassment by disciplining him more severely for tardiness than other employees. This claim was not settled because Darden was permanently discharged on October 17, 1979 for an unexcused absence.

After his termination, Darden amended the remaining EEOC charge to include a complaint based on retaliatory discharge. In November the EEOC issued its opinion finding "no reasonable cause" to believe that Illinois Bell had disciplined or discharged Darden either because of his race or in retaliation for his previous EEOC complaint. The EEOC then issued a right to sue letter and on January 17, 1980, Darden filed his *pro se* suit. Darden separately grieved the discharge through his union and submitted to arbitration. In February 1981, the arbitrator determined that Illinois Bell had "just cause" to discharge Darden and that Darden had failed to prove that Illinois Bell had fired him for discriminatory or retaliatory reasons. Subsequently, the trial court denied Darden's request for

counsel and, relying in part on the arbitrator's decision, granted summary judgment to Illinois Bell on Darden's claim that Illinois Bell had no just cause to discharge him and had discriminated against him in violation of Title VII. We granted Darden's request for appointed counsel for purposes of this appeal.

## II.

■ Darden's first issue on appeal concerns the district court's treatment of his requests for counsel. Darden apparently made two such requests: although the first does not appear on the district court's docket, the court on March 6, 1981, issued an order denying appointed counsel.[2] Darden made a second request on May 22, 1981, to which the district court made no response. Darden's position is that both the district court's refusal to appoint counsel and its failure to respond to the second request constituted an abuse of discretion. *See Jones v. WFYR Radio/RKO General*, 626 F.2d 576, 578 (7th Cir.1980) ("denial of counsel will only be overturned for an abuse of discretion"), *overruled on other grounds, Randle v. Victor Welding Supply Co.*, 664 F.2d 1064 (7th Cir.1981) (plaintiffs cannot take interlocutory appeals from denials of their counsel requests).

The court's initial decision to deny Darden appointed counsel is to be analyzed, as Darden correctly points out, under the guidelines discussed in *Jones, supra. See, e.g., McKnight v. United States Steel Corp.*, 726 F.2d 333, 337 (7th Cir.1984). Those guidelines "articulate[] three factors to be weighed by the district court: the merits of the plaintiff's claim, the plaintiff's diligence in attempting to obtain a lawyer, and the plaintiff's financial ability

---

**2.** The sequence of events highlights, as Darden points out, the difficulty of proceeding without counsel. Darden filed his complaint and petition to proceed *in forma pauperis* on January 17, 1980, and the district court denied the petition on January 25, 1980. Although Darden paid his filing fee within a month, the clerk failed to file and serve Darden's complaint on Illinois Bell until March 3, *1981* —more than a year after suit was filed. The court shortly

thereafter made its ruling on the request for counsel. While Darden claims no prejudice resulting from this delay, we urge the district courts to make special efforts to protect *pro se* litigants from lengthy delays. Specifically with regard to requests for counsel, district courts should engage *pro se* plaintiffs in a dialogue, *see infra* pp. 501–502, at the earliest possible opportunity.

to retain counsel." *Jones,* 626 F.2d at 577. Darden claims that the district court failed to undertake a well-reasoned consideration of any of these factors, since the record does not reveal that Darden had any opportunity to present the court with his objections to the EEOC's findings on the merits, or that he was aware that he should provide the court with information about his attempts to find a lawyer and his financial status. We affirm the district court's decision to deny appointed counsel because the court correctly determined that Darden's Title VII claims had no merit. Nevertheless, the district court's treatment of the counsel request demonstrates that while the factors enunciated in *Jones* are unambiguous, the process that the court must undergo in order to implement them appropriately is less than clear. We will briefly discuss this process before turning to the court's treatment of the individual factors in this case.

■ It is apparent from the nature of the *Jones* factors that any one of them may be determinative in a particular case. That is, if a discrimination claim lacks merit, counsel will not be appointed regardless of the plaintiff's diligence in seeking representation or lack of financial means.[3] Similarly, a plaintiff with a very strong case may be refused appointed counsel because he or she is able to pay for an attorney. A judge does not necessarily err, therefore, by basing the counsel decision on one factor alone. Nevertheless, the object of the undertaking is to ensure appropriate decisions at both the district court and appellate levels by gathering and preserving on the record as much information as is reasonably feasible at the most opportune stage in the proceedings. Thus, even if the district court is convinced that one factor is determinative, it should preserve on the

record information relevant to the other two *Jones* factors, as detailed below at pages 7–8. Since it is the plaintiff who must provide the court with this information, the court should ensure an adequate record by providing "some guidance to the plaintiff regarding the factors that it may consider ... and the showing that will be expected of plaintiff." *Poindexter v. FBI,* 737 F.2d 1173, 1184 (D.C.Cir.1984). Although this record-creating process need not be elaborate, it will lessen the likelihood that the district court's decision will be attacked as baseless, as well as the necessity for remand should the district court's assessment of the determinative factor be overturned on appeal. We turn now to examine the *Jones* factors individually and the adequacy of the district court's inquiry in the present case.

■ With regard to the issue of merits, we noted in *Jones* that the trial court cannot rely solely on the EEOC's finding of "no reasonable cause" to justify a denial of counsel for lack of merit. "Rather, the district court should make some appraisal of the merits of plaintiff's claim." 626 F.2d at 577. We explained that this appraisal need not be extensive, but we suggested that the court "conduct a brief oral examination of the plaintiff and review the EEOC record." *Id.* We concluded in *Jones* that "if the court finds that the EEOC's determination is supported by substantial evidence and that the plaintiff's objections to the determination are insubstantial, it may accord the Commission's findings weight." *Id.*

■ Here, the district judge indicated both in his order denying counsel and in a subsequent memorandum and order that he had requested and reviewed "the entire

---

**3.** The merits determination is made more difficult by the fact that the plaintiff is unrepresented and is thus far less likely to present his or her claims in their best light. We need not decide here just how much of an argument on the merits the plaintiff must have, since Darden's Title VII claims clearly had no merit. It should be noted that there is a spectrum of merit-related decisions that extends between summary judgment determinations and dismissals for frivolousness. The determination involved in the Title VII appointed counsel context is much closer to the latter than the former because of Congress's concern for unrepresented Title VII litigants and because, as we noted above, most unrepresented plaintiffs will fail to present the merits of their cases skillfully.

EEOC investigative file" on Darden's final amended charge. The judge concluded from his review that "there is insufficient merit to the claim to justify appointment of counsel." This satisfies our requirement that the district court make an independent determination of the merits from the EEOC file, and the judge's finding of no merit in Darden's case was not erroneous. We are concerned, however, by the absence in the record of any indication that Darden had an opportunity to explain to the court his objections to the EEOC's determination. Our language in *Jones* made it clear that the plaintiff's information should be part of the basis of any informed evaluation of a counsel request. We hold, therefore, that in cases in which a counsel request is denied because of the claim's lack of merit, the record must reflect that the court gave the plaintiff an opportunity to give his or her version of the facts and to object to the EEOC's determination.

If the court denies a counsel request on merit grounds without providing the plaintiff this opportunity, it risks a remand unless another ground for affirmance appears in the record. A remand is not necessary in this case, however, because when Darden filed his second request for counsel, he put in writing his objections to the EEOC's "no reasonable cause" determination. Our review of his statement reveals that his objections were insubstantial and on their face involved issues and claims that were put before the Commission. Thus, even had Darden communicated these objections to the district court before its ruling on the first motion, the outcome would not have been different. We caution, however, that a district court should not supplant this "merits dialogue" with a plaintiff by relying on the plaintiff to put his or her views of the merits into the record at a later date. Even if a plaintiff did so, in most cases we doubt whether the record would be sufficiently complete for us to determine, as we were able to do here, that the plaintiff's objections are immaterial.

■ The two other *Jones* factors similarly should not be overlooked. We noted above that the record should demonstrate that the district judge informed the plaintiff that he or she should submit evidence of attempts to retain counsel and financial status. This information can be made available to plaintiffs either verbally or in a printed page appended to the court's form Title VII complaint. The notification can be brief and simple; its object is not to create a procedural right in the *pro se* plaintiff, but to provide the court with a basis on which to make its determination. After all, a decision made in the absence of a basis is an abuse of discretion.

The district court here implied that its decision to deny appointed counsel was grounded in all three *Jones* factors, although the record fails to reflect that the court had any basis on which to evaluate Darden's efforts to obtain counsel and his lack of financial ability. Nevertheless, we affirm the district court's decision to deny Darden's request because of his claim's lack of substantive merit. We emphasize, however, that in order to avoid reversal for an incorrect assessment of one of the factors, a district court should not limit the record to its review of that one factor. Instead, a complete record would reveal that the Title VII plaintiff was informed of the requirements for appointment of counsel and was given an opportunity to attempt to satisfy those requirements. As we noted above, this manner of handling requests for counsel is important to increase the chances of correct decisions— both at the trial and appellate levels—on requests for counsel and to avoid costly and time-consuming remands. The D.C. Circuit noted in *Poindexter* that "[t]he goal, of course, is to make a sound determination as to whether appointment is appropriate. Achievement of this goal is most likely if the relevant information is before the court." 737 F.2d at 1184. We thus affirm the district court's March 6, 1981 denial of counsel, subject to the precautions outlined above.

■ Darden makes a final claim concerning appointment of counsel: his second request, filed on May 22, 1981, received no

response from the court. Darden suggests that the district court's failure to act on this motion constituted an abuse of discretion. We decline to hold that the court abused its discretion when it made no comment on a motion filed less than three months after its denial of a previous request. In general, however, the court should encourage plaintiffs to update requests for counsel, provided that new information is available or that their situations have changed. This illustrates why it is so important for courts at the outset to inform plaintiffs of the *Jones* factors: once plaintiffs have made their initial requests based on those factors, courts can limit their review of subsequent motions to new materials or changed circumstances.[4]

To summarize, we affirm the district court's refusal to appoint counsel, based on the fact that Darden's underlying claim was of insufficient merit. We suggest, however, that plaintiffs be informed at the outset of the factors on which their requests will be decided and be given some opportunity to object to the agency determination of their claim's merits. At a minimum, then, the *pro se* plaintiff should be informed: (1) that he or she has an opportunity to provide the court with an assessment of the merits, including the opportunity to enter objections to the EEOC's decision; (2) that diligence in attempting to procure counsel is relevant and that some showing of diligence should be made; and (3) that financial ability to pay for counsel is relevant and that he or she should provide the court with a statement of financial status. We further encourage district courts to facilitate periodic updating of counsel requests. These procedures will ensure that counsel requests contain sufficient facts for efficient, informed decision-making.

### III.

We come now to Darden's contention that the district court erred in granting summary judgment to Illinois Bell. A review of the district court's decision reveals that it was based on sound reasoning and an appropriate use of the arbitrator's determination, and the decision therefore is affirmed.

Darden's suit, as it developed in the district court, contained three claims: (1) the claim that Illinois Bell discharged Darden without just cause; (2) the claim that the discharge was violative of Title VII because it was motivated by racial discrimination and the desire to retaliate for Darden's EEOC charges; and (3) the claim, later settled, that Illinois Bell had breached the agreement executed in March 1979, concerning the company's failure to promote Darden. On appeal, Darden now seeks to recharacterize his suit as also including a discrimination claim based on the underlying failure to promote and one alleging discrimination in disciplinary *procedures*, as opposed to discharge. Since these claims were not before the arbitrator, Darden urges us to hold that the district court accordingly erred in granting Illinois Bell summary judgment. The district court record is not susceptible of this reading of the suit, however. Darden submitted to that court an extraordinarily careful and well-organized position statement and memorandum that clearly set forth the three claims noted above. Moreover, the parties conducted the litigation according to these parameters. It is too late, therefore, to recast the issues in order to find error in the district court's decision.

Turning to Darden's final assertion, that the district court gave too much weight to the arbitrator's determination when it granted summary judgment on the first two claims, we find no error. First, the district court properly construed Darden's "just cause" claim as a contractual one[5] and therefore was correct in holding

---

4. Courts also may want to re-evaluate *successful* requests for appointed counsel at periodic intervals. Should the plaintiff's financial situation improve, the court may order that some or all of counsel fees be borne by the plaintiff.

5. Even if the "just cause" claim encompassed a Title VII claim, Darden was not harmed by the

that Darden could not seek review of the arbitration award without alleging that the union breached its duty of fair representation in the arbitration proceedings. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976). Since Darden did not make that allegation, the arbitrator's determination on the "just cause" issue must stand.

■ The arbitrator's decision on the Title VII claim is *not* entitled to complete deference, however. *Alexander v. Gardner-Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Supreme Court in *Gardner-Denver* refused to make a holding regarding the specific weight to be given to an arbitrator's decision, but stated that a court could accord "great weight" to a determination that gave full consideration to the Title VII claim. The Court cautioned, though, that Congress had entrusted the "ultimate resolution of discriminatory employment claims" to the judiciary. *Id.* at 1025 n. 21. The district court was well aware of this and accorded the arbitration decision "great weight," while recognizing that "great weight" is not the same as "beyond dispute." The "great weight" standard was appropriate here, since the arbitrator clearly construed the collective bargaining agreement in accord with Title VII to proscribe racially discriminatory and retaliatory discharges, and thus fully considered Darden's Title VII claim. Reviewing the arbitrator's finding that Illinois Bell had not discharged Darden for either of these illicit reasons, along with the totality of the evidence (which, as Darden himself acknowledges, was the same evidence that had been before the arbitrator), the district court did not err when it held that Darden had failed to create a genuine dispute as to the real reason for his discharge.

For these reasons, the judgment of the district court is AFFIRMED.

court's deference to the arbitration award since all of his Title VII claims were independently

EASTERBROOK, Circuit Judge, concurring.

I join the opinion of the court. Although pro se litigants are not generally entitled to be told the law, see *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir.1986), for the judge is not an ombudsman, it is humane as well as prudent to help the pro se litigant learn the essential ingredients of a request for appointed counsel. Knowledge makes it easier for a person to vindicate his substantive rights and for the judge to pass on the litigant's claims. Simple notices of preliminary steps, especially how to apply for counsel, are wise judicial administration. The court makes it clear, however, that not all wise things create personal rights. I hope we shall not see complaints about the adequacy of the notice, as opposed to the substance of the judges' decisions.

The court properly leaves open questions concerning the extent to which judges should appoint counsel under 42 U.S.C. § 2000e–5(f)(1). The statute does not require district judges to appoint counsel whenever an impecunious plaintiff has been unable to persuade a lawyer to bring a colorable case. A judge should find out *why* counsel declined to take the case. If no one would take the case because the plaintiff was obnoxious or because other cases were stronger on the merits, a judge ought not to appoint counsel. This would force the civil rights bar to displace strong cases with weak ones; lawyers should be able to handle the strongest cases first.

One reason why judges do not review prosecutors' decisions to pick some cases rather than others is that they cannot see the full menu of choices and therefore cannot make intelligent decisions about which cases are the best available. *United States v. Schwartz*, 787 F.2d 257, 266 (7th Cir.1986). There is a similar problem deciding which cases need the assistance of counsel. Some litigants will handle their own cases better than others; the assistance of counsel should be used only when

reviewed by the court. *See infra* p. 504.

its marginal benefit is greatest, but this is hard to tell from a review of the case file. And lawyers must exercise judgment in choosing from the palette available. If a good lawyer skilled in Title VII law would decline to represent a paying client with a 20% chance of prevailing, a judge ought not compel that same lawyer to take the case of an indigent plaintiff with a 15% chance of prevailing. A colorable claim is not enough. Indigents are not entitled to preferential treatment. All who claim scarce resources must pay, stand in line, show a superior entitlement, or all three.

Congress did not doubt the value of voluntary transactions in allocating legal services. The statute authorizing the award of attorneys' fees in civil rights cases, 42 U.S.C. § 1988, depends on voluntary arrangements as the mainstay of civil rights enforcement. Attorneys' time should go first where it is most valuable. People claiming to have been injured by defective products must persuade lawyers to take their cases, and as a rule people claiming to have been injured by violations of Title VII also should abide the judgment of the bar about whose case is strongest. Yet if a person has trouble getting a lawyer because the bar is hostile to civil rights claims, or because the anticipated attorneys' fees under § 1988 are insufficient, then there is a stronger reason to appoint counsel. Unless fees under § 1988 are enhanced to take account of the risk of losing—whether through a multiplier or by the contingent fee device when the stakes are high—fees will be systematically too small. See *Kirchoff v. Flynn*, 786 F.2d 320, 325–26 (7th Cir.1986). So the appointment of counsel under § 2000e–5(f)(1) may be an important tool. But it is not one to be used reflexively. A large bar is engaged in Title VII practice. This bar brings many cases, some with excellent chances and some marginal. This court has not been flooded with colorable cases, prosecuted pro se, that leave us wondering why no member of the bar would assist. Experience should lead us to rely on the care of the legal profession and of the district courts to decide when cases should proceed with counsel. See *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.1983), at 764–66 (majority opinion), 769–71 (dissenting opinion). I do not understand today's decision to diminish the discretion of the district courts to make prudent judgments about whether to conscript members of the bar to take cases when they have good reasons to do other work instead. See *Maclin v. Freake*, 650 F.2d 885, 886 (7th Cir.1981).