**Lillian A. GRAHAM, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., a
Delaware corporation,
Defendant.**

No. 86–C–516–C.

United States District Court,
N.D. Oklahoma.

Aug. 11, 1989.

Craig Tweedy, Sapulpa, Okl., and R.V. Funk, Tulsa, Okl., for plaintiff.

Frederic N. Schneider, III and Kimberly A. Lambert, Boone, Smith, Davis & Hurst, Tulsa, Okl., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

H. DALE COOK, Chief Judge.

The above-styled action for discrimination on account of sex predicated on 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964 came on for nonjury trial. Evidence was presented on May 9 to May 13, 1988, May 16 to May 20, 1988, May 23 to May 24, 1988, March 13 to March 16, 1989, and March 20 to March 22, 1989. Closing argument was held on March 23, 1989. After considering the pleadings, the testimony and exhibits admitted at trial, all of the briefs and arguments presented by counsel for the parties, and being fully advised in the premises, the Court enters the following Findings of Fact and Conclu-

sions of Law in accordance with Rule 52, F.R.Cv.P.

## FINDINGS OF FACT

### A. *Jurisdiction and Venue*

1. The alleged acts of employment discrimination upon which plaintiff predicates her action occurred during the years 1984 and 1985.

2. The plaintiff, Lillian Graham (Graham), has filed the following charges of discrimination.

    a. March 5, 1985 charge of discrimination filed with Equal Employment Opportunity Commission (EEOC).

    b. June 26, 1985 charge of discrimination filed with Oklahoma Human Rights Commission (OHRC).

    c. August 22, 1985 charge of discrimination filed with the OHRC.

    d. October 1, 1985 charge of discrimination filed with the EEOC.

A notice of right to sue was issued on February 24, 1986. On May 23, 1986, Graham filed her Complaint within ninety (90) days of the notice.

3. The defendant, American Airlines, Inc. (American), is an employer engaged in an industry that affects commerce and employs more than fifteen (15) employees for each working day in each of the twenty (20) or more calendar weeks in the calendar years involved herein. Thus, American was an employer within the meaning of Title VII during the calendar years involved herein.

4. The alleged unlawful employment practices which are the subject of this action were committed in Tulsa, Oklahoma, within the Northern District of Oklahoma.

### B. *Liability of Defendant American*

5. Graham is an adult female and resident of Tulsa, Oklahoma.

6. On July 1, 1968, Graham was employed by American. Graham's employment was subject to the terms of employment appearing on the employment application she signed when she became employed by American. Graham was discharged from American on October 31, 1985 for the

stated reasons of insubordination, loafing on the job and failure to cooperate with other employees in violation of Company Rules 7, 12 and 15 and her overall employment record consisting of the following disciplinary actions:

| | | |
|---|---|---|
| July 17, 1984 | C–314 | Three–Day Suspension and Warning |
| June 24, 1985 | C–314 | Five–Day Suspension and Warning |
| July 2, 1985 | C–314 | Warning |
| Sept 27, 1985 | C–314 | Eight–Day Suspension and Final Warning |

During her employment, Graham was affected by several layoffs due to a reduction in force; therefore Graham was employed by American for a total period of approximately ten (10) years.

7. At all times pertinent to her Title VII claim, Graham was an airplane mechanic at American assigned to the Tulsa maintenance and engineering facility and was a member of the collective bargaining unit represented by the Transport Workers Union of America, AFL–CIO (TWU). Graham's employment with American was governed by the Collective Bargaining Agreement.

8. Under the labor agreement, American recognized the TWU as the sole and exclusive collective bargaining representative of the employees covered thereby, with respect to wages, hours of employment and other conditions of employment as provided by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Under the labor agreement, American retained the right to the extent not limited or modified by the terms and conditions of the agreement to hire, promote, assign to shifts, maintain discipline and discharge for justifiable cause. American and the TWU further agreed that the agreement contained the whole agreement of the parties as to all existing matters that may be subject to the Collective Bargaining Agreement for the duration of the labor agreement.

9. The arbitrators who heard Graham's grievances are members of the American Association of Arbitrators and were chosen by mutual agreement between American and the TWU.

10. Graham was hired on July 1, 1968 as a junior mechanic in the compo-

nents/avionics maintenance department. On July 1, 1969, Graham was promoted to a mechanic after passing the qualifying test for electrical instrument overhaul. On August 28, 1970, Graham was laid off due to a reduction in force at American. On September 10, 1970, Graham failed the qualifying test for a gyro instrument overhaul.

11. On September 10, 1973, Graham was recalled from layoff and assigned to the components/avionics maintenance department. On November 11, 1974, Graham was again laid off due to a reduction in force.

12. On February 3, 1977, Graham was recalled from layoff and assigned to the aircraft maintenance department.

13. On July 27, 1977, Graham received a C–314 disciplinary warning for being in the smoking area for an excessive time period in violation of Rule 15 of American's Rules and Regulations preventing loafing on the job. A C–314 Form is used to notify employees regarding disciplinary action up to and including discharge. Graham filed a grievance objecting to the warning. A neutral arbitrator upheld American's disciplinary warning contained in the C–314.

14. On October 18, 1977, Graham received a C–314 disciplinary warning for violating Rule 3, remain in work area. This grievance was denied at the first and second steps. Graham did not pursue the disciplinary warning to arbitration.

15. On June 7, 1978, Graham received a C–314 and a three-day disciplinary suspension without pay for violating Rule 3, remain in work area, and Rule 15, restriction of output. This discipline was upheld in arbitration by the neutral arbitrator.

16. On March 3, 1979, Graham was reassigned within aircraft maintenance from the 707 aircraft to the 747 aircraft. On March 2, 1979, Graham was reassigned from the 747 aircraft to the 707 aircraft.

17. On September 14, 1979, Graham received a C–314 form for violating Rule 3, out of work area, and Rule 15, restriction of output, resulting in Graham's discharge from American. On October 8, 1979, at the request of the TWU, management convert-

ed Graham's discharge to a disciplinary suspension and she was reinstated without pay pursuant to an agreed rehabilitation plan.

18. On October 12, 1979, Graham filed an EEOC charge of discrimination based on sex alleging that her discharge was based on sexual harassment. After an on-site investigation of Graham's charge by the EEOC, the EEOC on July 10, 1980 issued a written determination in favor of American.

19. On May 8, 1980, Graham received a C–314 disciplinary warning for violating Rule 22 for receiving a garnishment. The garnishment was later discharged by the court. On July 23, 1980, Graham began a leave of absence for sick leave.

20. On September 2, 1980, Graham returned from sick leave and was assigned to the 747/DC–10 line in aircraft maintenance.

21. On August 28, 1981, Graham was laid off due to a reduction in force. On January 25, 1982, Graham was recalled from layoff and assigned to the 727 line in aircraft maintenance. On September 1, 1982, Graham was reassigned within aircraft maintenance from the 727 to the 747/DC–10 line.

22. On April 26, 1983, Graham received a C–314 and ten-day disciplinary suspension for unsatisfactory job performance due to Graham's failure to connect a pressure line on the aircraft's emergency evacuation equipment which was discovered by the FAA during a surprise inspection at the Los Angeles International Airport. This discipline was upheld in arbitration. Two male mechanics also received C–314's and ten-day and twelve-day disciplinary suspensions, respectively, for the same unsatisfactory job performance. The male supervisor involved received a ten-day suspension.

23. On July 11, 1983, Graham was reassigned (labor loaned) from aircraft maintenance to the JT–3 check and repair shop in power plant maintenance. On October 10, 1983, Graham was reassigned from power plant maintenance back to aircraft maintenance.

24. On March 1, 1984, Graham was reassigned within aircraft maintenance from the 727 line to the 747/DC–10 line at her request.

25. On July 17, 1984, Graham was issued a C–314 and a three-day disciplinary suspension for her failure to tighten a "B" nut on an aircraft. Such discipline for a leak found at a leak check was unprecedented at American. Graham filed a grievance protesting this disciplinary action in accordance with labor agreement. The arbitration board upheld American's disciplinary action.

26. On August 2, 1984, Graham was reassigned from the aircraft maintenance department to another department at the American engineering and maintenance base and was permanently restricted from working in the aircraft maintenance department. Graham filed a grievance protesting this permanent restriction on August 3, 1984 which grievance stated in pertinent part:

> On August 2, 1984, I received an AA Form No. 541–3 reassigning me from aircraft maintenance, shop 2254–2 to the blade and vane shop, 259–9. I also received a letter from acting aircraft maintenance director, C.L. Harliss, permanently restricting me from working in the aircraft maintenance department.
>
> This is a violation of the TWU–AA Agreement. The company has treated me unjustly, they have harassed, threatened and discriminated against me because I am a woman. Therefore, I grieve to be assigned back to the aircraft maintenance, shop 2254–2 immediately. I am qualified to perform this work. Also, I grieve the above mentioned letter be rescinded and removed from all records. (Defendant's Exhibit 54).

On March 28, 1985, the System Board of Adjustment made the following arbitration award:

> The claim by the union and Ms. Lillian Graham, that she had been subjected to unequal treatment for reason of her sex, in violation of the Agreement's Article 28, is denied.

The claim by the Union and Ms. Lillian Graham that the permanent restriction of her working as an Airline Mechanic in the Aircraft Maintenance Department violated the Agreement, is sustained. The restriction shall be rescinded and job vacancies in the Aircraft Maintenance Department shall be available to her as provided by the Agreement. (Defendant's Exhibit 58).

27. Field trip hours were to be equalized among the employees under the collective bargaining agreement because field trips were attractive by virtue of the travel and overtime. On December 17, 1984, Graham submitted her AOI requesting her assignment to a scheduled field trip to Wichita, Kansas, and was present when Crew Chief Nevins told Supervisor Barton that if Graham went on the field trip, Barton could get another crew chief to go. On the same day, Supervisor Barton filed his AOI denying Graham's field trip permission because her medical file showed that she was restricted to safety wiring work because of elbow problems. Graham informed Supervisor Barton that her elbow was no longer a problem. In response and on December 18, 1985, Supervisor Barton conducted a F–29 disciplinary meeting because Graham did certain work on a pump as recommended by another mechanic and suggested a possible suspension. Graham offered to withdraw her field trip request if he would not suspend her. On the same day, December 18, 1984, Graham filed her AIO withdrawing her request for the field trip and no suspension was imposed.

28. On August 13, 1984, Graham was reassigned within power plant maintenance from the blade and vane shop to the JT–3 check and repair shop. On March 5, 1985, Graham filed an EEOC charge of discrimination based on sex and based on her permanent restriction from working in aircraft maintenance.

29. The Supervisor's Record of Discussion and Action to Graham indicates George Barton counseled Graham about her job performance on several occasions. On May 6, 1985, George Barton gave Graham an overall performance rating which was below average.

30. On June 7, 1985, Graham worked on a fourth stage turbine disk. She reported a dent to her supervisor. On June 24, 1985, plaintiff received a five day suspension without pay. Graham's grievance was denied on September 30, 1985. (Defendant's Exhibit 70). During trial, plaintiff attempted at length to demonstrate (1) the disk on which she was working belonged to American, and was distinct from a disk belonging to Ports of Call, and (2) she did not damage the disk. The Court has concluded that the disk involved was the Ports of Call disk, and that plaintiff damaged it. Under questions from the Court, plaintiff's memory was unclear as to precisely what happened. (*See* Transcript, Vol. V, pp. 486–492). Plaintiff's daughter, Sandra Whiteis, testified at trial that her mother telephoned one day from work, admitting that plaintiff had damaged a turbine disk. Viewing also the testimony of various other eyewitnesses, the Court has concluded that the preponderance of the evidence lies in defendant's favor on this issue.

31. Graham took a one week vacation the next day, June 8, 1985. She travelled to American's headquarters in Dallas, Texas. She sought to report sexual abuse to Vice President Masiello. He told plaintiff to provide the names of offenders and witnesses to her supervisors. On plaintiff's first day back, June 17, 1985, supervisor Barton yelled at her for reporting to Dallas and ordered her to sort out nuts and bolts.

32. Certain records pertinent to the disk discipline were missing. The Court finds that the factual determination can still be made and that American's explanation for the missing records (they were used in arbitration proceedings and apparently misplaced) is plausible. A "scrap tag" produced at trial shows the Ports of Call disk to have been scrapped as useless on May 13, 1985. Viewing the totality of evidence, the Court finds the most plausible conclusion to be that a "5" (representing the fifth month) was written, when a "6" was intended, and that the disk was scrapped on June 13, 1985.

33. On June 24, 1985, Graham received a C–314 and five-day disciplinary suspension for unsatisfactory job performance which was upheld in arbitration. On June 26, 1985, Graham filed an EEOC charge of discrimination based on sex and based on the alleged sexual harassment by her co-workers. When Graham complained in June, 1985, of sexual harassment, American conducted an investigation of her complaints by interviewing those persons who she had named as persons harassing her. While American concluded that no sexual harassment had occurred, American did find that Graham and two male mechanics, Alan Powers and Darrell Martin, had engaged in conduct which violated Rule 31, horseplay, for which Graham, Powers and Martin each received a disciplinary C–314 warning. The C–314 Graham received for violating Rule 31, horseplay, was upheld in arbitration.

34. Graham received her Airframe and Power Plant (A & P) License on July 16, 1985.

35. On August 22, 1985, Graham filed an EEOC charge of discrimination based on sex and based on her five-day disciplinary suspension for unsatisfactory job performance imposed by the June 24, 1985 C–314.

36. On September 26, 1985, Graham did not take her break with the men at 0800 hours but worked for a while and then went to the ladies' rest room and took a 10–15 minute break. While there, Graham read a jewelry brochure with order forms left in the restroom by another employee.

37. On September 27, 1985, Graham received a C–314 and eight-day disciplinary suspension for violating Rule 3, remaining in work area, and Rule 15, restriction of output, which suspension was upheld in arbitration. The infraction citation of September 27, 1985, was based, in part, on information supplied by a female office worker sent to the women's restroom by Ken Harding of Labor Relations to spy on Graham. On October 1, 1985, Graham filed an EEOC charge of discrimination based on sex and based on the eight-day suspension and alleged bypass for overtime work.

38. On October 31, 1985, Graham was discharged from American pursuant to Form C–314 for violation of Rule 7, 12 and 15 and because of her overall employment record consisting of the following disciplinary actions:

| | | |
|---|---|---|
| July 17, 1984 | C–314 | Three–Day Suspension and Warning |
| June 24, 1985 | C–314 | Five–Day Suspension and Warning |
| July 2, 1985 | C–314 | Warning |
| Sept 27, 1985 | C–314 | Eight–Day Suspension and Final Warning |

This discharge was upheld in arbitration.

39. The plaintiff has complained that she was assigned undesirable tasks while employed in the JT–3 department such as sorting nuts and bolts, painting equipment, washing airplane engines and filling out paperwork or not rotated on her job assignments because of her sex or in retaliation for her filing EEOC charges. The Court finds that the plaintiff has failed to establish that she was assigned these jobs or not rotated because of her sex or in retaliation for her filing EEOC charges of sex discrimination.

40. The plaintiff also complained that other mechanics took breaks and committed acts of unsatisfactory job performance and were not disciplined. The plaintiff failed to establish that she was treated any differently than any other mechanic.

41. The plaintiff has also complained that she was denied paperwork in violation of FAA regulations or denied documentation which would prove she did not damage a turbine disc because of her sex or in retaliation for her filing EEOC charges. The Court finds that the plaintiff has failed to establish that she was denied paperwork in violation of FAA regulations or denied documentation which would prove she did not damage a turbine disc.

42. The plaintiff complains that she was required to take a qualifying test in order to bid on certain jobs. The defendant, American, established that the requirement that plaintiff take a qualifying test was made only after the company began to hold grave doubts that the plaintiff could perform certain jobs. Further, the defendant had the contractual right to require that

the plaintiff take a qualifying test. The Court further finds that plaintiff refused to take a qualifying test. The Court finds that the requirement that plaintiff take a qualifying test in order to bid on certain jobs was not made because of plaintiff's sex, or in retaliation against plaintiff for filing EEOC charges or to harass plaintiff because of her sex.

43. The plaintiff complains that she was the victim of sexual harassment by two mechanics and her crew chief. The Court finds that in June, 1985, after plaintiff had made several allegations of harassment against two male mechanics, Darrell Martin and Alan Powers, the defendant conducted a thorough investigation of plaintiff's charges. The defendant interviewed each person named by the plaintiff as a person who had either harassed plaintiff or, according to plaintiff, had observed any incident of harassment. While the defendant concluded that no sexual harassment of plaintiff had occurred, American did find that Graham and the two male mechanics, Alan Powers and Darrell Martin, had engaged in conduct which violated Rule 31, horseplay, for which Graham, Powers and Martin each received a disciplinary C–314 warning. Plaintiff's testimony in this regard was not incredible in many respects, but fails to meet the necessary burden of proof standing alone.

44. Most witnesses testified that Graham was an average mechanic. The Court finds from the evidence presented that the plaintiff has established that she was qualified for and able to do the job for which she was discharged.

45. From the admitted facts and evidence admitted at trial, the Court finds that Graham received numerous C–314 disciplinary forms for violations of American's rules and regulations including incidents of unsatisfactory job performance. The supervisor notes also establish that Graham's supervisors counseled Graham on several occasions for poor job performance. The Court finds that Graham was a disciplinary problem. Graham frequently refused to remain in her work area. With only one exception, all the arbitration awards all held that defendant's disciplinary actions of plaintiff were fair, proper and not based on unequal treatment.

46. Graham claimed that American engaged in a pattern of disparate treatment, retaliation and harassment against her because of her gender. The Court fails to discern such a pattern.

47. The Court further finds that male mechanics received similar disciplinary actions for similar violations of American's rules and regulations. The Court finds that no employee with as many C–314's as Graham was allowed to remain employed at American.

48. The Court finds that Graham was not subject to unwelcome sexual harassment. There was conflicting testimony regarding plaintiff's wearing of "suggestive" T-shirts, and engaging in "shop talk" (i.e., using profanity). The Court finds that plaintiff failed to sustain her burden of proof on the issue.

49. The Court further finds that as noted before when Graham made her allegations of sexual harassment, her claims were immediately and thoroughly investigated and appropriate action was taken. Graham identified three male mechanics who she alleged sexually harassed her. American concluded after a thorough investigation that while no sexual harassment had occurred, there were instances of horseplay in which Graham herself had engaged. The defendant therefore issued horseplay warnings to Graham and two of the three mechanics. Graham also complained that a newspaper article written about her had been altered by some male mechanics. The written additions ridiculed Graham for poor job performance. The alterations contained no sexual innuendos or vulgarities. When Graham brought the newspaper article to the attention of defendant, the defendant again thoroughly investigated the matter. Supervisor Barton issued a written warning to the three mechanics thought to be involved stating that any such future conduct could result in further discipline up to and including discharge. Additionally, when Graham complained that an inspector had used vulgar

language toward her, the inspector's supervisor issued a written warning to the inspector not to speak to Graham in that manner. The Court further finds that Graham was not prevented from bidding back into aircraft overhaul. To the contrary, Graham could have bid back into aircraft overhaul if she would have passed a qualifying test. American's administration manuals allow management to require a mechanic to take a qualifying test if management doubts a mechanic's skill level to perform a job. The Court notes that the arbitrator who lifted Graham's permanent restriction from aircraft overhaul did not place her back into aircraft overhaul but simply stated that American should allow Graham to bid into aircraft overhaul if she wanted the "risk of failing once again and incurring harsher discipline". (March 28, 1985 arbitration decision by Milt Rubin). The Court finds that American was not restricting Graham from bidding back into aircraft overhaul but rather was simply exercising management prerogative to require Graham to take a qualifying test.

50. The Court further finds that Graham was not passed over for overtime as a result of retaliation. The Court finds that in order to be eligible for an overtime job, a mechanic must have previous experience with that job. The Court finds that Graham had no experience in performing the tasks required for overtime.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

### A. *Jurisdiction*

1. All filing requirements of Title VII of the Civil Rights Act of 1964 as amended in 1972 (Title VII) which are a prerequisite to the jurisdiction of this Court have been satisfied by the plaintiff herein. Title 42 U.S.C. § 2000e–5(e), (f)(1).

2. The defendant therein is an employee subject to the provisions of Title VII. 42 U.S.C. § 2000e–5(e), (b), (h).

3. Venue properly lies in this Court. 42 U.S.C. § 2000e–5(e), (f)(3).

### B. *Weight to be Given to the Arbitration Decisions*

As noted, with one exception the penalties imposed on plaintiff were upheld in arbitration. It is established that "a court must not give a prior arbitration preclusive effect in a Title VII suit." *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1553 (10th Cir.1988). However, defendant asks the Court to give great weight to the arbitration decision, based upon factors enunciated in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Court finds this precedent largely inapplicable because in the present record there is only one instance of plaintiff specifically raising a charge of sexual discrimination, as distinct from basic unfairness. A court can accord an arbitral determination great weight when the determination gives full consideration to an employee's Title VII rights. *Alexander*, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21. Here, there has been an insufficient showing that such full consideration was given. Congress has entrusted the ultimate resolution of discriminatory employment claims to the judiciary. *Darden v. Illinois Bell Tele. Co.*, 797 F.2d 497, 504 (7th Cir.1986). The Court has determined to give little weight to the arbitration decisions.

### C. *Plaintiff's Sexual Harassment Claim*

In *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court affirmed the development of a cause of action for "sexual harassment" under Title VII.

#### Prima Facie Case

In a claim of hostile work environment because of sexual harassment, the employee must prove the following for a prima facie case: (1) that the employee belongs to a protected group; (2) that the employee was subject to "unwelcome" sexual harassment; (3) that the harassment complained of was based on sex; and (4) that the harassment complained of affected a "term, condition, or privilege" of employ-

ment. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th Cir.1987). The Court must conclude that plaintiff failed to establish a prima facie case. Testimony of plaintiff's daughter as to statements of plaintiff tends to resolve the conflicting evidence in the conclusion that plaintiff was not subjected to "unwelcome" sexual harassment. The Court wishes to make clear that it is viewing the totality of the circumstances. The wearing of a T-shirt with a "suggestive" phrase or picture on it or the use of profanity is not an invitation to sexual harassment. In the face of conflicting testimony, even assuming *arguendo* that certain instances of touching by co-workers may well have occurred and been unwelcome, plaintiff has not shown that the sexual harassment was sufficiently severe or persistent to affect seriously her psychological well-being. *Sparks*, 830 F.2d at 1561. The sexual conduct was not, from this record, sufficiently pervasive to create a hostile or offensive work environment. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987). Thus, even if the second element of the prima facie case has been established, the fourth has not.

It has also been held that plaintiff must prove employer liability for another employee's actions under agency principles. *See Hicks*, 833 F.2d at 1417–18. One court has stated that

> the ultimate burden of proof is upon the plaintiff to additionally demonstrate respondeat superior liability by proving that the employer, through its agents or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 621 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

Plaintiff has also failed to meet this burden of proof. From the record before the Court, those allegations which were made were investigated and admonitions given.

### D. Plaintiff's Disparate Treatment Claim

#### Prima Facie Case

■ In a discharge case, based on disparate treatment, a prima facie case consists of the following: (1) plaintiff is a member of a protected group; (2) she was qualified for the position from which she was dismissed; (3) she was removed from that position; (4) she was replaced by someone not a member of the protected group. *Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1129, 1135 (10th Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983).

■ The plaintiff herein has made out a prima facie case of discrimination in her termination from employment.

The burden that shifts to the defendant requires defendant to rebut the presumption of discrimination by producing evidence of a legitimate non-discriminatory reason for the discharge of the plaintiff. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981): "The defendant need not persuade the Court that it was actually motivated by the proffered reasons. (citation omitted). It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* 254–255, 101 S.Ct. at 1094.

Defendant has met its burden of rebutting the plaintiff's prima facie case of discrimination (assuming the prima facie case has been shown) by articulating a lawful reason for its action, that is, by producing admissible evidence which would allow the Court to conclude that the employment decision had not been motivated by discriminatory animus. *Id.* 257, 101 S.Ct. at 1095.

The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Texas Department of Community Affairs, supra*, 253, 101 S.Ct. at 1093. In essence, the burden of the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant

were not its true reasons, but were a mere pretext for discrimination," merges with the ultimate burden of proving intentional discrimination. *Id.* 253, 256, 101 S.Ct. at 1093, 1095. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805–06, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973); *Sabol v. Snyder*, 524 F.2d 1009, 1012–13 (10th Cir. 1975).

It has been held that

Where, as here, the employer's asserted justification is that the employee violated a work rule, the employee must prove pretext by showing either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated. *Sparks*, 830 F.2d at 1563.

Plaintiff has failed to sustain this burden. The Court is persuaded that plaintiff did violate the work rules in question and that other employees who violated the rules were similarly treated. Plaintiff's disparate treatment claim fails.

### E. *Plaintiff's Retaliation Claim*

■ Although such a claim was not emphasized by plaintiff, defendant has responded in its briefs and proposed findings to a possible retaliation claim.

To establish a prima facie case, plaintiff must show:

1. That she engaged in protected opposition to Title VII discrimination;

2. Adverse action by the employer subsequent to or contemporaneous with such employee activity;

3. A causal connection between the protected activity and the adverse employment action. *Burrus v. United Telephone Co.*, 683 F.2d 339, 343 (10th Cir.1982).

While plaintiff demonstrated that she filed EEOC charges and travelled to Dallas to report alleged discrimination (both protected activities), she failed to show a causal connection between her activities and her discharge. Again, the preponderance of the evidence demonstrates that plaintiff's rule violations were the cause of her discharge.

### F. *Plaintiff's State Law "Claims"*

On March 18, 1987, the Court granted defendant's motion for partial summary judgment as to plaintiff's second cause of action for emotional distress. On April 5, 1988, the Court denied plaintiff's motion to reconsider that Order. During trial, plaintiff made an oral motion pursuant to Rule 15(b) F.R.Cv.P. to add claims for fraud and intentional infliction of emotional distress. The motion was denied. Now, in her post-trial brief, plaintiff repeats the request. For the reasons stated at trial and in the previous Orders mentioned above, the Court again denies the request.

It is the Order of the Court that judgment be entered in favor of defendant and against plaintiff.

IT IS SO ORDERED.