947 F.2d 948
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles E. THOMASON, Plaintiff-Appellant,
v.
USX CORPORATION, et al., Defendants-Appellees.
 No. 89-1373.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 10, 1991.*
Decided Oct. 22, 1991.
 
 Before BAUER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.
 
 Order
 
 1
 Five years into this employment discrimination case the court dismissed the complaint as frivolous under 28 U.S.C. § 1915(d). It did so after appointing an attorney as a form of special master, to investigate the facts on the court's behalf. Charles Thomason's initial lawyer withdrew, and the district judge appointed Paul Leonard in his stead. Leonard reported that the facts do not support Thomason. The court dismissed the case "[b]ased on Attorney Leonard's determination that there is insufficient evidence to justify an amendment to save the complaint".
 
 
 2
 This is an inappropriate procedure. A judge ought not appoint a lawyer at all unless the complaint surmounts the minimal frivolousness requirement of § 1915(d). See Nietzke v. Williams, 490 U.S. 319 (1989) (discussing § 1915); Darden v. Illinois Bell Telephone Co., 797 F.2d 497 (7th Cir.1986); Maclin v. Freake, 650 F.2d 885, 886 (7th Cir.1981) (discussing standards for appointment of counsel). A lawyer is supposed to be an advocate for the party, not an investigator for the judge. If a lawyer's report is to be the basis of dismissal, the plaintiff may well have the right to put his "advocate" on the stand and determine through cross-examination the thoroughness of the investigation. Dismissing a case because a lawyer will not pursue it also violates 28 U.S.C. § 1654, which permits litigants to prosecute their own cases. Moreover, what a lawyer reports has nothing to do with the standard of Fed.R.Civ.P. 8 and § 1915(d). A judge must examine what the complaint alleges--that is, the nature of the dispute--and not decide at the inception whether a party will fail in his proof. That is reserved for summary judgment or trial.
 
 
 3
 We are reluctant, however, to direct further proceedings in this case, which deals with events in 1983. Unlike wine, justice does not improve with age. The complaint fails to state a claim on which relief may be granted, see Fed.R.Civ.P. 12(b)(6), and although Nietzke holds that such a failure does not justify dismissal under § 1915(d), the invocation of § 1915(d) here is a misnomer. The defendants were served with the complaint, and proceedings in the district court spanned five years. Understood as a dismissal under Rule 12(b)(6), this order is unexceptionable.
 
 
 4
 Thomason contends that race played a role in his discharge from United States Steel Corp. (the name in 1983 for what is now a division of USX Corp.), violating 42 U.S.C. § 1981. It is clear from McKnight v. General Motors Corp., 908 F.2d 104 (7th Cir.1990), that this fails to state a claim. A racially-motivated discharge does not deny black persons the right to enter into and enforce contracts. Rather it sets up an action on the contract, in the ordinary course.
 
 
 5
 The "ordinary course" here was supplied by labor law. The union initiated a grievance on Thomason's behalf and took it to arbitration. The arbitrators ruled against Thomason. His second claim, then, is a hybrid contract/duty of fair representation claim against USX and the United Steelworkers Union. Unless Thomason prevails against the union, the employer is entitled to the benefit of the favorable arbitral decision. Thomason's claim against the union fails, however, because he does not allege any cognizable theory of recovery. That the union erred is not enough; it takes more than negligence to violate the duty of fair representation. Steelworkers v. Rawson, 110 S.Ct. 1904 (1990). Thomason protests not error in pursuing the grievance but a decision to accept an arbitration clause that does not allow the grievant compulsory process to call witnesses from management. We suppose that grievants would like such power--at least in retrospect, if the union did not have to surrender anything else in negotiations to get such a clause--but an argument that arbitration would create better prospects for workers if workers had more rights does not begin to state a claim under labor law.
 
 
 6
 A union fulfills its duties unless it acts arbitrarily, discriminatorily, or in bad faith, the members have no claim. Air Line Pilots Ass'n v. O'Neill, 111 S.Ct. 1127 (1991). How much to seek in arbitral rights, as opposed to wages or pensions, is a question for the union's members, not for the courts. As there is no free lunch in labor negotiations, better terms of arbitration mean less in the paycheck. Nothing in the union's choice here smacks of arbitrariness. Given the wide range allowed to the negotiating parties, Thomason's hankering for a different bargain does not state a claim on which relief may be granted.
 
 
 7
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record