

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-29-2005

# Parker v. Univ PA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3688

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Parker v. Univ PA" (2005). *2005 Decisions.* Paper 1289.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1289

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-3688
_____

GORDON ROY PARKER,
                                        Appellant,

v.

UNIVERSITY OF PENNSYLVANIA,
A PENNSYLVANIA NONPROFIT CORPORATION

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 02-cv-00567)
District Judge: Honorable Anita B.  Brody

_____

Submitted Under Third Circuit LAR 34.1(a)

April 18, 2005

BEFORE: NYGAARD, VAN ANTWERPEN and STAPLETON, CIRCUIT JUDGES

(Filed:  April 29, 2005)
_____

OPINION
_____

PER CURIAM

        Appellant Gordon Roy Parker, a former employee of the University of

Pennsylvania ("Penn"), submitted his resume electronically to Penn's human resources

web site on July 16, 2001. His resume indicated his interest in administrative or clerical positions, and described in some detail his prior work experience in these fields, including, on page 2 of the resume, his 1992-93 job at the Penn health center.[1] Importantly for purposes of this appeal, Parker's resume did not disclose his race, which is white, or his mental health history. App. 325-26. His name, of course, suggested that he is male. Neither his resume nor his cover letter indicated that he was applying for any open or available position.

Parker also wrote a letter to Penn's Office of Affirmative Action on July 27, 2001, demanding a job and complaining about discrimination against white males. This letter, which the parties have referred to as a "grievance," was general in nature in that it omitted any reference to Parker having posted his resume on the human resources web site two weeks before. On October 23, 2001, when Parker had not received a call for an interview, he filed a charge of discrimination with the Equal Employment Opportunity Commission.

After receiving his Notice of Right to Sue, Parker filed a complaint pro se against Penn, alleging claims of race and gender discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 et seq. (West 2003), and a claim of disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (West 1995). After a period of discovery, the parties

---

[1] Inasmuch as we are writing only for the parties, we need not set forth the factual background of this matter, except as may be helpful to our brief discussion.

filed cross-motions for summary judgment, and, in a judgment entered on September 10, 2004, the District Court awarded summary judgment to Penn on Parker's claims of race and gender discrimination and retaliation.

Earlier in the litigation, in an order entered on June 20, 2003, the District Court dismissed Parker's ADA claim as a sanction for failure to submit to a psychiatric examination. In an order entered on the same day as the judgment, the court denied Parker's motion for reconsideration and motion for leave to amend his complaint to add an equal protection claim and a claim based on post-filing conduct. Parker appeals the summary judgment entered in Penn's favor, as well as several interlocutory orders issued by the District Court, and the sanctions imposed on him for his refusal to be examined by a psychiatrist.

We will affirm the order granting summary judgment to Penn on the claims of race and gender discrimination, and retaliation, and the order denying reconsideration and the post-judgment motion to amend. Our review of the District Court's grant of summary judgment is plenary and we must affirm summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We have carefully reviewed the record and conclude that summary judgment in favor of Penn was proper.

With respect to Parker's claim that Penn failed to hire him on the illegal basis that he is white and male, we conclude that he failed to make out a prima facie case of

discrimination.[2]  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Despite posting his resume and writing a letter to Penn's affirmative action office, Parker

did not actually apply for any open or available position.  To make out a prima facie case

of discrimination in a failure to hire case where no employment application has been

submitted, a plaintiff must show that he generally made his interest in the position known

to the prospective employer.  See Equal Employment Opportunity Comm'n v. Metal

Service Co., 892 F.2d 341, 348-50 (3d Cir. 1990).  Penn established by affidavit that

Parker's actions do not meet this test.  Parker's assertion that he made his interest known

by posting his resume and writing a general letter of complaint must be supported by

competent evidence at the summary judgment stage, Fed. R. Civ. Pro. 56(e), and it was

not.

   With respect to the disparate income claim, the District Court found that Parker

lacked standing, noting that there was "simply no evidence that any decisions Penn has

allegedly made with respect to promoting employment diversity have ever had any effect

on plaintiff."  Parker has identified no such evidence and, accordingly, we, too, find a

lack of standing.

   We further conclude that Parker failed to make out a prima facie case of

retaliation.  Parker alleged that, instead of acting on his letter/grievance, Penn's

affirmative action office engaged in "extensive internal communications" about him.

_____

   [2]  We are free to affirm the judgment of the District Court on any basis which finds
support in the record.  See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980).

4

App. 181. To make out a claim of retaliation, Parker must show that he engaged in a protected activity, that he suffered an adverse employment action, and that there was a link between the activity and the adverse action. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). Assuming, as the District Court did, that the adverse employment action was the failure to hire him, Parker failed to make a prima facie showing of the existence of a causal link between Penn's failure to hire him and the filing of the "grievance."

Finally, Parker's post-judgment attempt to amend his complaint to add an equal protection claim and a claim concerning post-filing conduct[3] came too late in the day, because it would have forced Penn to defend the case all over again. See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273-74 (3d Cir. 2001) (court has considerable discretion in denying post-judgment motion to amend).

We also will affirm the District Court's orders denying appointment of counsel, Parker's numerous motions to compel or extend discovery, and Parker's request for $1500.00 from the Public Interest Civil Litigation Fund.[4] The District Court did not

---

[3] In an effort to cure the deficiencies in his case, Parker flooded Penn with applications for employment, by applying for 90-100 specific administrative positions from March through June 2002. He received four interviews and no offers. App. 181.

[4] Our affirmance extends to the orders docketed at entry nos. 7 and 24, and 51 and 55 (to the extent these orders addressed discovery matters), 68, and 88 (to the extent this order denied costs). An order that is not adverse to appellant, including, but not limited to, the District Court's original decision to grant appointment of counsel, is not appealable. See Seidman v. City of Beverly Hills, 785 F.2d 1447, 1448 (9th Cir. 1986); 8 James Wm. Moore, et al., Moore's Federal Practice, ¶ 41.34[7][b] (3d ed. 1998).

abuse its discretion in denying Parker's requests for additional discovery, see, e.g., Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000), appointment of counsel was unwarranted given Parker's abilities as a writer and presenter of arguments and the relative weakness of his claims, see Darden v. Illinois Bell Telephone Co., 797 F.2d 497, 500-03 (7th Cir. 1986), and Parker established no legal entitlement to be paid out of the Public Interest Civil Litigation Fund.

Last, we turn to the order entered on June 20, 2003 awarding money sanctions and dismissing Parker's ADA "regarded as disabled" claim, which we also will affirm.[5] Penn moved to compel Parker to be examined by a psychiatrist pursuant to Federal Rule of Civil Procedure 35, contending that the results of said examination would bear on Parker's disability discrimination claim and the question of damages. Penn asserted that good cause existed because Parker himself asserted that he had been diagnosed with a bipolar disorder in the past.

Following oral argument on the motion, the District Court ordered Parker to submit to a psychiatric examination. Parker then withdrew his ADA claim predicated on actual disability, and any remedies based on emotional distress, mental anguish and loss

---

[5] We necessarily also consider the propriety of the District Court's orders requiring Parker to be examined by a psychiatrist as they form the basis for an award of sanctions. We need not address the court's order denying an interlocutory appeal. An order requiring a Rule 35 examination, like most all discovery orders, is an interlocutory order that is not appealable until the conclusion of the case, see Reise v. Bd. Of Regents of Univ. of Wisconsin System, 957 F.2d 293, 295 (7th Cir. 1992), and, in any event, if Parker wished to contend otherwise, he should have appealed to this Court or petitioned this Court for mandamus relief.

of enjoyment of life. Parker, however, preserved his ADA claim based on perceived disability, see 42 U.S.C. § 12102(2)(C), that claim being that Penn's refusal to hire him in 2001 was the result of its improper perception that he was unemployable because he suffers from a bipolar disorder, an impression allegedly formed during his previous employment.

The District Court held a telephone conference, and, on April 8, 2003, again ordered Parker to undergo, the next day, a psychiatric evaluation, notwithstanding the withdrawal of all but the "regarded as disabled" claim. App. 72-73. Parker refused, and did not attend the examination. Penn moved for sanctions and Parker asked to be allowed to take an interlocutory appeal. The District Court awarded Penn $480 for the missed appointment and $520 for attorneys fees for a total sanction of $1,000. The court also dismissed Parker's ADA claim as a sanction and would not grant him an interlocutory appeal.

Although discovery is liberally granted generally, the physical or mental examination of a party pursuant to Federal Rule of Civil Procedure 35 is only ordered if the mental or physical condition of a party is "in controversy" and there is "good cause" for the examination. Fed. R. Civ. Pro. 35(a). In Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964), the Supreme Court explained that the "in controversy" and "good cause" requirements would not be satisfied by conclusory allegations, or by assertions of mere relevance to the case. Rather, the movant must make an affirmative showing that the

requirements have been satisfied.  Id.

Parker contends on appeal that, having withdrawn his ADA claim predicated on actual disability, and his request for a remedy based on emotional distress, mental anguish and loss of enjoyment of life, he should not have been ordered to undergo a psychiatric examination.  His claim that he was regarded as disabled focused not on his actual abilities, but rather on the reactions and perceptions of persons interacting with him.  We conclude, however, that the issue in controversy was not so narrow insofar as Parker himself disclosed that he had previously been diagnosed as having a bipolar disorder.  Because a specific cause of action remained under the ADA concerning whether Parker was regarded as disabled because of a major psychiatric illness, and he had previously been diagnosed as suffering from a major psychiatric illness, his mental health was in controversy and good cause existed for an examination by a psychiatrist.

Therefore, sanctions were appropriate for his failure to attend the examination, and the modest money sanction imposed pursuant to Fed. R. Civ. Pro. 37(b)(2) was not an abuse of discretion.  See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 919 (3d Cir. 1992).  We also conclude that dismissal of the ADA claim as a sanction was appropriate, see Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984), because a defendant is entitled under the rules of discovery to uncover the facts supporting the allegations in a plaintiff's complaint.  Our conclusion in this respect is grounded also on our belief that Parker did not make out a prima facie case under the

ADA.  There is no evidence on this record that Penn mistakenly believed that Parker had an impairment that substantially limited one or more major life activities, or that an actual impairment substantially limited one or more of his major life activities.  See Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999).

We will affirm the judgment of the District Court and all interlocutory orders appealed.